Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Tel: 415-986-1400
jennie@andrusanderson.com

Myron M. Cherry (SBN 50278)
Jacie C. Zolna (*pro hac vice*)
Benjamin R. Swetland (*pro hac vice*)
**MYRON M. CHERRY & ASSOCIATES, LLC**
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Tel: 312-372-2100
mcherry@cherry-law.com
jzolna@cherry-law.com
bswetland@cherry-law.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AGUILAR AUTO REPAIR, INC. and CENTRAL COAST TOBACCO CO., LLC, individually and on behalf all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., PRIORITY TECHNOLOGY HOLDINGS, INC., PRIORITY PAYMENT SYSTEMS, LLC and THE CREDIT WHOLESALE COMPANY, INC.,<br><br>        Defendants. | Case No. 3:23-cv-06265-AMO<br><br>Honorable Judge Araceli Martínez-Olguín<br><br>**PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 12, 2024<br>Time: 2:00 PM<br>Courtroom: 10 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 12, 2024, at 2:00 PM, the undersigned will appear before the Honorable Judge Araceli Martínez-Olguín in Courtroom 10, 19th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, and shall then and there present Plaintiffs' Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement.

Plaintiffs move the Court for an order certifying a settlement class, preliminarily approving the settlement of this class action, approving the proposed plan for notifying the class, and setting a date for a final approval hearing. This motion is based on the following Memorandum of Points and Authorities, as well as all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this motion.

**TABLE OF CONTENTS**

INTRODUCTION................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY........................2-4

    A.    **Defendants and the payment processing industry** .............................2

    B.    **Class Counsel's investigation of, and
prior litigation involving, privacy violations
in the payment processing industry**................................................ 2-3

    C.    **The current lawsuit** ..................................................................... 3-4

SUMMARY OF SETTLEMENT TERMS ..................................................... 4-6

ARGUMENT ............................................................................................. 6-21

    A.    **The Court should certify a settlement class** ............................. 7-10

    B.    **The settlement should be preliminarily approved** ................... 10-15

        *1.*    *The strength of Plaintiffs' case* ......................................... 11-12

        *2.*    *The risk, expense, complexity, and
likely duration of further litigation* ...................................12

        *3.*    *The risk of maintaining class action status throughout the trial*...... 12-13

        *4.*    *The amount offered in settlement*.......................................13

        *5.*    *The extent of discovery completed
and the stage of the proceedings*.......................................14

        *6.*    *The experience and views of counsel* ........................... 14-15

        *7.*    *The presence of a governmental participant*.......................15

        *8.*    *The reaction of the class members to the proposed settlement* ...............15

    C.    **The requested award of attorneys' fees, costs,
and incentive awards are reasonable** ......................................... 15-20

        *1.*    *Attorneys' fees should be awarded using
the percentage of the fund method*................................ 15-19

        *2.*    *A lodestar cross-check is not appropriate
under the circumstances* ............................................... 19-20

        *3.*    *The costs and requested incentive awards are fair and reasonable*........20

    D.    **The proposed form and method of class notice satisfies due process** .............21

1

**INTRODUCTION**

2      This settlement is one of the largest ever under the California Invasion of Privacy Act

3   ("CIPA"). Defendants have agreed to pay $19,500,000 for the benefit of the class *and* cover

4   settlement administration costs up to $200,000. This is the second-highest amount ever recovered

5   for a class under CIPA. Moreover, the compensation rate per class member will far surpass all

6   other large CIPA settlements. Here, approximately 92,668 class members received approximately

7   149,010 calls. *See* Declaration of Jacie C. Zolna ("Zolna Decl.") at ¶ 10, attached as Ex. A. Thus,

8   the settlement provides a recovery of $210.43 per class member and $130.86 per call. *Id*. at ¶ 12.

9   Based on anticipated claims rates, class members will likely receive individual settlement

10  payments in the *thousands of dollars each*, even *after* the payment of requested attorneys' fees,

11  costs, and incentive awards. *Id.*

12     Only one other CIPA case has produced a larger settlement (also negotiated by Plaintiffs'

13  counsel here), but that case involved significantly more class members and CIPA violations. *Id.* at

14  ¶ 5 (describing $78,000,000 settlement covering 1,603,445 calls, or $48.65 per call). Other

15  settlements recovered less compensation for even more class members. The previous largest

16  CIPA settlement was $18,000,000, but included 4,000,000 class members, or $4.50 per class

17  member. *Id*. at ¶ 11. A small handful of other CIPA class actions have settled for over

18  $10,000,000, but they all involved hundreds of thousands—or even millions—of class members

19  and per-class member payouts as low as $1.06 and no higher than $144.22. *Id*. at ¶ 13 and Ex. 2.

20  In fact, CIPA settlements that exceed $100 per class member are extremely rare. Most CIPA class

21  actions settle in the range of less than $1 to approximately $60 per class member. *Id*. at ¶ 14. The

22  settlement reached here far exceeds that benchmark.

23     On top of all that, Plaintiffs also secured prospective relief that prohibits future calls from

24  being recorded without disclosure. In sum, the settlement provides substantial and record-setting

25  monetary relief to the class and prevents tens of thousands of California businesses from being

26  subjected to privacy violations in the future. For these reasons, and those set forth below, the

27  Court should certify a settlement class, preliminarily approve the settlement, approve the

28  proposed plan for notifying the class, and set a date for a final approval hearing.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

2

**A.    Defendants and the payment processing industry.**

3       Defendant Wells Fargo Bank, N.A. ("Wells Fargo") runs a nationwide payments

4    processing business. *See* Complaint at ¶ 2. This business processes millions of credit and debit

5    card transactions around the country every day. *Id.* Every business in the United States that

6    accepts payment by Visa or Mastercard must have a relationship with a bank, like Wells Fargo,

7    that is a member of the Visa or Mastercard payment networks. *Id.* at ¶ 27. These banks employ

8    sales and marketing companies called Independent Sales Organizations ("ISOs") or Member

9    Service Providers ("MSPs") to manage, market, and sell their credit and debit card processing

10   services to businesses. *Id.* at ¶¶ 3, 31. The payments processing industry is self-regulated by Visa

11   and Mastercard. *Id.* at ¶ 6. Both of these payment networks publish extensive regulations that

12   define the roles of banks, processors, and sales companies. *Id.*

13      In this case, Defendants The Credit Wholesale Company, Inc. ("Wholesale") and Priority

14   Technology Holdings, Inc. and Priority Payment Systems, LLC (together, "Priority") were

15   ISO/MSPs of Wells Fargo. *Id.* at ¶ 33. Priority was a much larger "processor" that provided

16   technological expertise to Wells Fargo in addition to doing sales and marketing for the bank. *Id.*

17   Priority also managed and supervised the work of Wholesale, a smaller ISO/MSP that focused

18   exclusively on soliciting merchants. *Id.* at ¶¶ 34-36. It did so by employing telemarketers to make

19   cold calls to merchants around the country. *Id.* at ¶ 37. The purpose of these calls was to schedule

20   in person appointments with a sales representative who would attempt to sell Wells Fargo's

21   payment processing services. *Id.* at ¶ 38. Wholesale recorded these appointment-setting phone

22   calls without ever warning the recipients. *Id.* at ¶¶ 41-46.

23

**B.    Class Counsel's investigation of, and prior litigation involving, privacy violations in
       the payment processing industry.**

24

25      For several years, Class Counsel has actively investigated privacy violations by ISOs in

26   the payment processing industry. *See* Zolna Decl. at ¶ 4. ISOs, however, are generally smaller

27   telemarketing companies against whom it would be difficult to recover any judgment or even a

28   modest settlement in a CIPA case. *Id.* Class Counsel developed a legal theory that would hold the

2

1    larger banks and processors vicariously liable for the acts of their ISO, relying in part on the Visa

2    and Mastercard rules. *Id.* To the Class Counsel's knowledge, no such legal theory had ever been

3    advanced in a CIPA case. *Id.*

4        In 2016, the Firm tested this legal theory in a class action lawsuit against, among others,

5    Wells Fargo, one of its processors, and one of its ISOs on behalf of California businesses whose

6    phone conversations were recorded without consent in violation of CIPA. *Id.* at ¶ 5. Wells Fargo

7    and the other defendants moved for sanctions against plaintiffs and Class Counsel asserting that

8    the suit was frivolous. *Id.* That motion was denied, as were numerous motions to dismiss, and the

9    Firm proceeded to prosecute the suit for six years. *Id.* After class certification was fully briefed

10   and awaiting a ruling, the suit settled for a total of $78,000,000, which represents the largest

11   settlement ever in a CIPA class action. *Id.*[1]

12   **C.    The current lawsuit.**

13       This lawsuit was filed in state court on October 10, 2023 on behalf of a proposed class of

14   small businesses in California who received sales appointment-setting calls from Wholesale. The

15   lawsuit alleges, among other things, that Wells Fargo and Priority were in a principal-agent

16   relationship with Wholesale and that, in the scope of that relationship, Wholesale violated CIPA

17   by recording telemarketing calls without any warning that the recording was occurring. On

18   December 4, 2023, Wells Fargo removed the suit to the United States District Court for the

19   Northern District of California. On February 16, 2024, Plaintiffs filed an amended complaint.

20       The Parties agreed to participate in an Early Settlement Conference and, as part of that

21   process, exchanged information, including, but not limited to, the contracts amongst Defendants

22   and data on call volume obtained from third parties via subpoena. The parties also exchanged

23   lengthy and substantive mediation statements, which spelled out their respective factual and legal

24   positions. On August 15, 2024, the Parties participated in an Early Settlement Conference before

25   Magistrate Judge Donna M. Ryu during which the Parties made progress toward, but were unable

26

27   [1] Class Counsel's concern about bringing suit solely against an ISO for CIPA violations proved
     correct. The ISO in the *Wang* case declared bankruptcy during the litigation, which resulted in the
28   ISO being dismissed from the case entirely. *See* Zolna Decl. at ¶ 6.

to reach, a settlement. The Parties thereafter continued to engage in settlement discussions with the assistance of Magistrate Judge Ryu, which resulted in the Parties reaching the settlement set forth herein, a copy of which is attached as Ex. B. It is estimated that the class includes approximately 92,668 potential members who received approximately 149,010 calls. *See* Zolna Decl. at ¶ 10. The average length of the calls at issue is approximately 45 seconds, with many lasting less than 15 seconds. *Id.* at ¶ 10.

## SUMMARY OF SETTLEMENT TERMS

Defendants will pay $19,500,000 (the "Settlement Fund") to create a non-reversionary common fund for the benefit of the class. *See* Settlement Agreement at ¶ 1. Defendants will also pay settlement administration costs up to $200,000. *Id.* at ¶ 10. Each class member who does not opt-out shall be eligible for a cash payment for each call that is covered under the class definition ("Eligible Call"). *Id.* at ¶ 2. To receive a settlement payment, class members need to submit a claim form either by mail or online. *Id.* at ¶ 4. The claim form is simple and non-cumbersome, and postage is pre-paid for its return mailing to the Settlement Administrator. *Id.* at Ex. 1. Each settlement payment will be in an amount equal to the Net Settlement Fund divided by all Eligible Calls that were made to class members who submit a claim up to a maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[2] Class members who received multiple Eligible Calls are entitled to a settlement payment for each Eligible Call. *Id.*

The parties agreed to retain Verita Global (the "Settlement Administrator") to administer the settlement. *Id.* at ¶ 5. A postcard notice will be sent by first class mail to each class member. *Id.* at ¶ 7.a. A Long Form Notice will also be published on the settlement website. *Id.* For any notice that is returned with a forwarding address, the notice and claim form will be re-mailed to the updated address. *Id.* at ¶ 7.b. For any notice that is returned without forwarding address information, the Settlement Administrator will use commercially reasonable efforts to locate a new address for the class member to mail the notice and claim form. *Id.* The Settlement Administrator will also publish a website that will include the Settlement Agreement, the

---

[2] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

Amended Complaint, the Long Form Notice, and other relevant documents, and will have the capability to accept claims online. *Id.* at ¶ 8. Notice of the settlement will also be published via the internet, which will contain a link to the settlement website *Id.* at ¶ 7.c. The Settlement Administrator will maintain a toll-free number to receive calls regarding the settlement. *Id.* at ¶ 9.

The settlement includes several features designed to ensure that the entire fund is distributed to the class. For example, if the initial claims rate is insufficient to exhaust the entire Net Settlement Fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim will be provided. *Id.* at ¶ 28. All reasonable efforts will also be used to ensure that class members who submit a claim receive and cash their settlement checks, including the reissuance of checks. *Id.* at ¶ 16. If funds still remain after 18 months, the Settlement Administrator will distribute those funds on a *pro rata* basis to class members who submitted a claim. *Id.* at ¶ 30. Only after those efforts have been exhausted will any remainder be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *Id.*; *see also* EFF website, https://www.eff.org/about; *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving EFF as *cy pres* recipient in CIPA settlement). Under no circumstances will any of the Settlement Fund revert to Defendants. *See* Settlement Agreement at ¶¶ 28, 30.

Class members may opt-out or object to the settlement. *Id.* at ¶¶ 19-20. Plaintiffs will seek incentive awards in the amount of $7,500 each. *Id.* at ¶ 17. Class counsel will seek an award of attorneys' fees in the amount of one-third of the Settlement Fund. *Id.* at ¶ 18. Class counsel will file their petition supporting their request for attorneys' fees and costs no later than 35 days prior to the deadline for class members to object to the settlement. *Id.* The following is additional information called for in this District's Procedural Guidance for Class Action Settlements:

INFORMATION ABOUT THE SETTLEMENT:

a. The proposed settlement class is broader than the class proposed in the Amended Complaint to include all calls to California, other than internal calls amongst Wholesale

employees or sales agents, even if they may not have been appointment-setting calls. This was done to resolve all potential claims involving Wholesale's recording of calls. The settlement class definition also now includes a date range, which was determined to be the relevant time period based on the information exchanged by the parties. Lastly, the Amended Complaint proposed two classes: one under § 632 of CIPA that covered all calls (landline and cordless/cellular) and another under § 632.7 of CIPA that covered only calls to cordless/cellular phones. Only one settlement class is proposed, covering all calls, because two classes are not necessary for purposes of administering the settlement.

b. The claims being released are commensurate with the claims in the Amended Complaint.

c. *See* Zolna Decl. at Exs. 2-3 for a comparison of class recovery to total exposure. The discount applied to the claims is justified in the light of the risks of the litigation (explained below) and favorable settlement terms in light of comparable cases.

d. Class Counsel is not aware of any other cases that will be affected by the settlement.

e. The proposed allocation plan for the settlement fund is discussed above.

f. Class Counsel estimates a claims rate of 8-12% based on the settlement of a similar suit (*Wang*) involving the same claims and industry and same notice procedures as this suit.

g. Under no circumstances will any of the Settlement Fund revert to Defendants.

SETTLEMENT ADMINISTRATION: *See* Zolna Decl. at ¶¶ 12-13 (discussing selection process for the settlement administrator); *see also* Declaration of Carla Peak, attached as Ex. C (discussing procedures for securely handling class member data and maintenance of insurance).

NOTICE, OPT-OUTS, and OBJECTIONS: The Notice, opt-out, and objection procedures comply with the District's Procedural Guidance for Class Action Settlements. *See* Settlement Agreement at ¶¶ 7-8, 19-20 and Exs. 1-2.

ATTORNEYS' FEES AND COSTS: *See* Zolna Decl. at ¶¶ 17-21; Section C, *infra*.

SERVICE AWARDS: *See* Zolna Decl. at ¶ 22; Section C.3., *infra*.

CY PRES: *See* Zolna Decl. at ¶ 25.

COMPARABLE OUTCOMES: *See* Zolna Decl. at ¶¶ 11-14 and Exs. 2-3.

6

1

**ARGUMENT**

2      The Court should certify a settlement class and preliminarily approve the record-breaking

3   settlement achieved here. "Where, as here, parties reach an agreement before class certification,

4   'courts must peruse the proposed compromise to ratify both the propriety of the certification and

5   the fairness of the settlement.'" *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 166 (N.D.

6   Cal. 2019) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). "If the court

7   preliminarily certifies the class and finds the settlement appropriate after 'a preliminary fairness

8   evaluation,' then the class will be notified, and a final fairness hearing scheduled to determine if

9   the settlement is fair, adequate, and reasonable pursuant to Rule 23." *Id.* (quoting *Villegas v. J.P.*

10  *Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov.

11  21, 2012)). As shown below, the class here clearly satisfies the requirements for certification

12  under Rule 23. Accordingly, the Court should certify a settlement class. Plaintiffs and Class

13  Counsel also achieved a substantial and record-breaking settlement—one of the largest on a per

14  class member basis ever (by a wide margin) under CIPA. The Court, therefore, should also grant

15  preliminary approval, direct that notice be sent to the class, and schedule a final approval hearing.

16  **A.      The Court should certify a settlement class.**

17     The Court should certify the proposed settlement class because it meets all the

18  requirements of Rule 23. Under Rule 23(a), a class must meet the following requirements for

19  certification: (1) numerosity, (2) commonality; (3) typicality, and (4) adequacy. *Uschold*, 333

20  F.R.D. at 167. In addition, "a putative class action must also meet one of the conditions outlined

21  in Rule 23(b)—as relevant here, the condition that 'questions of law or fact common to class

22  members predominate over any questions affecting only individual members, and that a class

23  action is superior to other available methods for fairly and efficiently adjudicating the

24  controversy.'" *Id.* The proposed class here easily satisfies these requirements.

25     First, the approximately 92,668 class members here easily satisfies the numerosity

26  requirement. *See* Zolna Decl. at ¶ 10; *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D.

27  Cal. 2007) ("[N]umerosity factor is satisfied if the class comprises 40 or more members.").

28

PLAINTIFFS' MOTION FOR CERTIFICATION AND PREL. APPROVAL        CASE NO. 3:23-cv-06265-AMO

1    Second, the claims of Plaintiffs and all class members are based on the same common set

2    of factual and legal issues: that they were illegally recorded without disclosure in violation of

3    California Penal Code §§ 632 and 632.7. The commonality element, therefore, is also met. *See*

4    *Mirkarimi v. Nevada Prop. 1, LLC*, No. 12-CV-2160 BTM DHB, 2015 WL 5022327, at *2 (S.D.

5    Cal. Aug. 24, 2015) ("The central issue common to all the proposed Class members is whether

6    Defendant violated the California Invasion of Privacy Act by recording their telephone

7    conversations without prior notice or consent, and if such calls gave rise to an objectively

8    reasonable expectation of privacy."); *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818

9    NC, 2015 WL 3990915, at *5 (N.D. Cal. June 30, 2015) (finding commonality element met in

10   CIPA class action); *McDonald v. Bass Pro Outdoor World, LLC*, No. 13-CV-889-BAS DHB,

11   2014 WL 3867522, at *4 (S.D. Cal. Aug. 5, 2014) (same); *Reed v. 1-800 Contacts, Inc.*, No. 12-

12   CV-02359 JM BGS, 2014 WL 29011, at *3 (S.D. Cal. Jan. 2, 2014) (same).

13       Third, Plaintiffs allege that they were recorded by Defendants without disclosure: the

14   same claim as all other class members. Thus, Plaintiffs' claims are typical of the class. *See Reed*,

15   2014 WL 29011, *4 ("Any minor differences regarding the calls would not sufficiently change

16   the nature of the claims such that Reed's claims would not be considered reasonably co-extensive

17   with the claims of other class members. Therefore, typicality exists.").

18       Fourth, Plaintiffs and their counsel will fairly and adequately represent the class. Neither

19   Plaintiffs nor their counsel have any interests antagonistic to or conflicting with other members of

20   the class. Plaintiffs' counsel are well-respected members of the legal community with decades of

21   experience in class actions, including claims under CIPA. *See* Zolna Decl. at ¶¶ 2-9. The

22   adequacy requirement is plainly met here.

23       Lastly, common issues of law and fact predominate over any individual issues that may

24   exist and a class action is superior to other available means for the fair and efficient adjudication

25   of this controversy. The central, predominating issues in this case are identical for every single

26   class member. Specifically, Cal. Penal Code § 632 prohibits the recording of a "confidential

27   communication." A communication is "confidential" under Section 632 by demonstrating an

28

8

1    "objectively reasonable expectation that the call was in fact *not* being recorded." *Wilborn v.*

2    *Greystar Real Estate Partners, LLC*, No. 12CV2277-MMA (MDD), 2013 WL 12111764, *3

3    (S.D. Cal. Jan. 8, 2013) (emphasis in original). And "the California Supreme Court strongly

4    suggested that consumers have a reasonable expectation that their calls will be kept private <u>unless</u>

5    warned that the call will be recorded." *Wilborn*, 2013 WL 12111764, *3 (*Kearney v. Salomon*

6    *Smith Barney, Inc.*, 39 Cal. 4th 95 (2006)) (emphasis in original). "The test of confidentiality

7    [under Section 632] is objective." *Coulter v. Bank of Am.*, 28 Cal. App. 4th 923, 929 (1994).

8         Here, Plaintiffs' and class members' claims are all based on Wholesale's uniform practice

9    of recording calls *without* disclosure that the call was being recorded. In other words, this case

10    involves a uniform practice of recording calls without warning and Plaintiffs could prove an

11    objectively reasonable expectation that the calls would not be recorded through this and other

12    common proof. *See Reed*, 2014 WL 29011, *4 (finding predominance satisfied for claims under

13    Cal. Penal Code §§ 632 and 632.7, noting that "[m]inor variations in the calls' contents, length, or

14    other characteristics would not be dispositive over whether the Privacy Act was violated.");

15    *McDonald*, 2014 WL 3867522, at *5 ("Here, a common issue predominates over any individual

16    issue-specifically, whether Defendants recorded telephone conversations without providing a

17    notice at the outset of the call, and whether such calls gave rise to an objectively reasonable

18    expectation that the calls would not be recorded under California Penal Code § 632."). This

19    common issue is central to this case and clearly predominates over any other issues.[3]

20         Resolving this controversy as a class action is also superior to other methods. There is

21    little to no incentive for class members to individually control the prosecution of separate actions.

22    *See McCabe*, 2015 WL 3990915, at *6 ("As this case involves hundreds of thousands of claims

23    for a statutory maximum recovery of $5,000, a class action is superior to an alternative method

24

25    [3] Under Cal. Penal Code § 632.7, the secret recording of a call is in and of itself a violation. Thus, there can be no doubt that those claims satisfy the predominance requirement. *See Ades v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS, 2014 WL 4627271, *10 (C.D. Cal. Sept. 8, 2014)

26    ("Omni argues that plaintiffs cannot prove on a classwide basis the 'injury' required to bring a damages action under § 637.2 because some putative class members assumed their calls would be

27    recorded, and therefore suffered no harm from being recorded without warning. But … the only 'harm' required by § 637.2 'is the unauthorized recording.'").

28

9

1  for adjudicating the plaintiffs' claims."). Indeed, to undersigned counsels' knowledge, no

2  individual suits have been filed in connection with Defendants' illegal call recording practice.

3       For these reasons, the Court should certify the following class for settlement purposes:

4       All businesses or individuals who received a telephone call from The Credit
        Wholesale Company, Inc. on a telephone in California between October 22, 2014
5       and November 17, 2023.

6  **B.    The settlement should be preliminarily approved.**

7       The Court should grant preliminary approval because the settlement provides greater relief

8  than any of the prior largest CIPA class action settlements. "A class action settlement must be

9  fair, adequate, and reasonable." *Uschold*, 333 F.R.D. at 166. In making this determination, courts

10 should consider: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and

11 likely duration of further litigation; (3) the risk of maintaining class action status throughout the

12 trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of

13 the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

14 participant; and (8) the reaction of the class members of the proposed settlement." *Id.* at 169

15 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).[4]

16      "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Id.*

17 (citation omitted). Because "these 'fairness' factors cannot be fully assessed until the Court

18 ─────────────────────
   [4] Rule 23 similarly provides that in approving a class action settlement, the court should consider
19 whether:

20      (A) the class representatives and class counsel have adequately represented the class;
        (B) the proposal was negotiated at arm's length;
21      (C) the relief provided for the class is adequate, taking into account:
              (i) the costs, risks, and delay of trial and appeal;
22            (ii) the effectiveness of any proposed method of distributing relief to the class,
              including the method of processing class-member claims;
23            (iii) the terms of any proposed award of attorney's fees, including timing of
              payment; and
24            (iv) any agreement required to be identified under Rule 23(e)(3); and
        (D) the proposal treats class members equitably relative to each other.

25 Fed. R. Civ. P. 23(e)(2)(A)-(D). Because these factors overlap with those set forth above, they
   will be addressed together. Specifically, factor (A) is addressed *supra* at 8, factor (B) is addressed
26 *infra* at 11, factor (C)(i) is addressed *infra* at Section B.2., factor (C)(ii) is addressed *supra* at 4-5,
   factor (C)(iii) is addressed *infra* at Section C, and factor (D) is addressed *infra* at 11. With respect
27 to factor (C)(iv), there are no agreements made in connection with the proposed settlement other
   than the Settlement Agreement.
28
─────────────────────
                                      10

1    conducts the final approval hearing, 'a full fairness analysis is unnecessary at this stage.'" *Id.*

2    (citation omitted). "Rather, preliminary approval ... is appropriate: if '[1] the proposed settlement

3    appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious

4    deficiencies, [3] does not improperly grant preferential treatment to class representatives or

5    segments of the class, and [4] falls with the range of possible approval.'" *Id.* (citation omitted).

6        Here, the settlement was the product of informed and arms-length negotiations overseen

7    by Magistrate Judge Ryu. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013)

8    ("[T]he settlement was reached after the parties participated in private mediation, which 'tends to

9    support the conclusion that the settlement process was not collusive.'") (citation omitted). The

10   settlement also has no obvious deficiencies. Indeed, on a per class member basis the settlement

11   provides substantially greater relief than all of the prior largest CIPA settlements. Other than

12   modest incentive awards in line with Ninth Circuit precedent, Plaintiffs and class members are

13   treated equally and entitled to the same settlement payment based on the number of calls they

14   received. *See Uschold*, 333 F.R.D. at 171 ("[T]here is no indication that the service award

15   constitutes 'preferential treatment' that would defeat preliminary approval."). The settlement also

16   clearly falls within the range of possible approval. CIPA class actions generally settle in the range

17   of less than $1 to $60 per class member. *See* Zolna Decl. at ¶ 14. A small number of outlier CIPA

18   settlements have settled in the $100-$150 per class member range. *Id.* at Ex. 2. The settlement

19   here—$210.43 per class member—far exceeds these prior settlements. It unquestionably is within

20   the range of possible approval. Lastly, even though a full assessment of the other fairness factors

21   is not necessary at this time, those too support preliminary approval:

22       **1.    *The strength of Plaintiffs' case.***

23       Plaintiffs believe strongly in their claims but recovery of an amount greater or even equal

24   to the settlement achieved here was far from certain. Defendants vigorously disputed the merits of

25   Plaintiffs' claims. Among other things, Wells Fargo and Priority maintain that there was no

26   principal-agent relationship with Wholesale and that their contracts disclaim any such

27   relationship. Even if there was a principal-agency relationship, Wells Fargo and Priority maintain

28

11

1  that Wholesale acted outside the scope of its authority by illegally recording calls. Whether these

2  complex issues would have been decided at summary judgment or at trial, they were far from

3  certain for either side. A ruling in favor of Wells Fargo and Priority would leave Wholesale as the

4  sole remaining defendant, a small telemarketing company that would be unlikely to fund the

5  current settlement by itself, much less a full judgment.

6       Defendants have also asserted that any aggregated damage award at $5,000 per call would

7  be unconstitutional under the Due Process Clause. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950

8  (8th Cir. 2019) (upholding district court's 98% reduction in statutory damage award in class

9  action from $1.6 Billion, or $500 per call, to $32 Million, or $10 per call). Defendants have raised

10  numerous other defenses as well, including that routine sales calls are not confidential under Cal.

11  Penal Code § 632, the case is unsuitable for class certification, and the suit is subject to a one year

12  statute of limitations. Plaintiffs disagree that these defenses have merit, but they nonetheless add

13  to the uncertainty of continuing the litigation.

14       In short, the settlement provides substantial and certain relief for vigorously contested and

15  uncertain claims. The first factor, therefore, supports preliminary approval of the settlement.

16       **2.**      *The risk, expense, complexity, and likely duration of further litigation.*

17       Trying this suit to conclusion would have been a complex, lengthy, and expensive

18  endeavor. Defendants vigorously contest vicarious liability and a trial on that issue alone would

19  have been time-consuming and expensive. Significant additional discovery—including dozens of

20  depositions and experts—would have been needed prior to any trial. In the recent *Wang* case, for

21  example, the litigation spanned six years just to get to the class certification stage. Summary

22  judgment, trial, and appeals would have added years to the litigation—and the same is true here.

23  The settlement, on the other hand, provides greater relief on a per class member basis than *Wang*

24  and on a much more expedited basis. Thus, the second factor clearly favors preliminary approval.

25       **3.**      *The risk of maintaining class action status throughout the trial.*

26       Plaintiffs believe this case can and would be certified as a class action as it involves a

27  uniform practice of recording calls without disclosure. There are, however, a line of cases

28

denying class certification of claims brought under Cal. Penal Code § 632. *See Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467 (2014) ("the determination whether an individual plaintiff had an objectively reasonable belief that his or her conversation … would not be recorded will require individualized proof"); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014) (same); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013) (same). Plaintiffs believe these cases are distinguishable from this case, but they nonetheless create a level of uncertainty to class certification. Settling the case now eliminates this risk and provides further support for preliminary approval. *See Mirkarimi*, 2015 WL 5022327, at *3 (preliminarily approving settlement of CIPA class action, noting that "the Class may not obtain or maintain certification or, even with certification, may not be able to ultimately recover damages").

### 4.    *The amount offered in settlement.*

The amount offered in settlement unequivocally supports preliminary approval. Numerous CIPA class actions have settled for *less than $1 per class member* and others have ranged anywhere from a few dollars to $50-60 per class member. *See* Zolna Decl. at ¶ 14. The per class member recovery here ($210.43) exceeds the largest prior CIPA settlements and is far greater than the benchmark range of less than $1 to $60 per class member in which CIPA class actions typically settle. Based on anticipated claims rates, class members will likely recover *thousands of dollars each*. This is a substantial payment for an intrusion of privacy that, on average, lasted 45 seconds and often less than 15 seconds. *See* Zolna Decl. at ¶ 10. The settlement also provides substantive prospective relief requiring Wholesale to disclose that calls are being recorded, thus preventing tens of thousands of future privacy violations. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (affirming district court's finding that prospective relief in a settlement of a CIPA suit—in the form of requiring a disclosure—"had value to absent class members"). This non-monetary relief in conjunction with "the large amount offered in settlement weighs heavily in favor of approval." *Reed*, 2014 WL 29011, at *6 (granting final approval of $11,700,000 settlement of CIPA class action on behalf of 81,796 class members, citing other CIPA settlements that ranged from $10-$30 per class member).

1

  **5.**  *The extent of discovery completed and the stage of the proceedings.*

2

  Prior to reaching a settlement, the parties exchanged substantive information in

3

connection with the Early Settlement Conference and apprised each other of their respective

4

factual contentions, legal theories, and defenses. Class Counsel also conducted months of

5

investigation prior to filing suit. Furthermore, many of the relevant documents in this case—

6

including the Visa and Mastercard rules that govern the relationship amongst the Defendants—

7

are publicly available and were fully analyzed by Class Counsel prior to filing suit. *See* Zolna

8

Decl. at ¶ 16. Other significant documents, including the contracts amongst Defendants, were

9

produced in the litigation, as was data on the number of calls. *Id.* The contracts and the Visa and

10

Mastercard rules are of significant relevance because they define the relationship and obligations

11

amongst the Defendants, which bear on, among other things, the issue of agency.

12

  "In the context of class action settlements, formal discovery is not a necessary ticket to the

13

bargaining table where the parties have sufficient information to make an informed decision about

14

settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended*

15

(June 19, 2000) (brackets, citation, and internal quotation marks omitted); *see also In re Immune*

16

*Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding that "the Parties have

17

a clear view of the strengths and weaknesses of their cases" based on "significant informal

18

discovery and investigation on the matters alleged, even though formal discovery was stayed").

19

Here, the parties exchanged substantive information and conducted a thorough investigation of

20

the claims and defenses, all of which weighs in favor of preliminary approval.

21

  **6.**  *The experience and views of counsel.*

22

  In connection with the sixth factor, Plaintiffs submit the Declaration of Jacie C. Zolna, a

23

lawyer with over 22 years of experience in complex and class action litigation. Mr. Zolna was one

24

of the lawyers appointed class counsel in the *Wang* case, which also involved CIPA violations in

25

the payment processing industry and resulted in the largest settlement by total dollar amount ever

26

in a CIPA class action. *See* Zolna Decl. at ¶ 5. Based on his extensive experience, Mr. Zolna

27

opines that the settlement is fair, reasonable, and adequate and provides a significant benefit to

28

PLAINTIFFS' MOTION FOR CERTIFICATION AND PREL. APPROVAL  CASE NO. 3:23-cv-06265-AMO

the class. *Id.* at ¶ 11. Mr. Zolna's opinion is based on his experience in CIPA class actions involving the payment processing industry, the amount of relief provided to the class, and a comparison of this settlement to other CIPA class action settlements. *Id.* "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *McDonald*, 2014 WL 3867522, at *8 (quoting *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Mr. Zolna's opinion, therefore, provides further support in favor of preliminary approval.

### 7.    *The presence of a governmental participant.*

"Because there is no governmental participant, this factor has no relevance in the court's consideration of the settlement's fairness." *Reed*, 2014 WL 29011, at *7. CAFA notice, however, will be provided to the appropriate governmental authorities. *See* Settlement Agreement at ¶ 11.

### 8.    *The reaction of the class members to the proposed settlement.*

Class members have yet to be advised of this settlement and, therefore, it is difficult to assess this factor at this time. Plaintiffs, however, are aware of no opposition to the settlement amongst class members or any other parties at this time. Plaintiffs will report the reaction of the class members to this settlement in their final approval papers.

## C.    The requested award of attorneys' fees, costs, and incentive awards are reasonable.[5]

### 1.    *Attorneys' fees should be awarded using the percentage of the fund method.*

Considering the record-breaking benefits conferred on the class, the risks undertaken by Class Counsel, and Class Counsel's unique knowledge and experience in this area of the law, the requested attorneys' fees and costs are also fair and reasonable. Federal courts sitting in diversity, like here, apply state law in determining both a party's rights to attorneys' fees and the method of calculating them. *See Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The California Supreme Court has endorsed the percentage of the fund method in awarding fees when class counsel's efforts have created a common fund for the benefit of the class:

---

[5] "At the preliminary approval stage, the Court does not need to determine attorney's fees." *Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2019 WL 5963648, at *12 (S.D. Cal. Nov. 13, 2019). The following, therefore, is only a preview of the legal and factual bases for the requested attorneys' fees, costs, and incentive awards.

1
2
3
4
5

> We join the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created. The recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation.

6   *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 503 (2016). Indeed, "the percentage-of-the-

7   benefit approach [is] the preferred method for determining fees in common fund cases." *Lealao v.*

8   *Beneficial California, Inc.*, 82 Cal. App. 4th 19, 31 (2000).

9        "While the California Supreme Court recognized the Ninth Circuit's twenty-five

10   benchmark for percentage awards in common fund cases, no such benchmark has been adopted

11   under California law." *Ramirez v. Merrill Gardens, LLC*, No. 1:22-CV-00542-SAB, 2024 WL

12   3011142, at *25 (E.D. Cal. June 11, 2024) (citing *Laffitte*, 1 Cal. 5th 480 (affirming award of fees

13   to class counsel in the amount of 33.33% of the $19,000,000 fund)). Rather, "California courts

14   routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No.

15   11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (citing cases).

16        In line with California precedent, Class Counsel requests attorneys' fees in the amount of

17   one-third ($6,500,000) of the $19,500,000 common fund. The requested fees are more than

18   reasonable considering the substantial benefits conferred on the class. As noted above, CIPA class

19   actions typically settle in the range of less than $1 to $60 per class member. A small number of

20   exceptional CIPA settlements have settled in range of $100-$150 per class member. The

21   settlement here—$210.43 per class member—far exceeds even the largest, outlier settlements.

22   Moreover, even *after* payment of the requested fees, costs, and incentive awards, class members

23   will likely receive individual settlement payments in the *thousands of dollars*—all for an intrusion

24   of privacy that lasted, on average, 45 seconds. Under any standard, Class Counsel obtained a

25   phenomenal and unprecedented result that more than justifies the requested attorneys' fees.

26        Even under Ninth Circuit law, its 25% benchmark can be adjusted upward depending on

27   "(1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee;

28

16

1   (4) counsel's efforts, experience, and skill; and (5) awards made in similar cases." *Carlin v.*

2   *DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1019 (E.D. Cal. 2019) (citing *Vizcaino v. Microsoft*

3   *Corp.*, 290 F.3d 1043 (9th Cir. 2002)). These factors also support the requested attorneys' fees.

4   Indeed, "in most common fund cases, the award exceeds that benchmark." *In re Stable Rd.*

5   *Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *13 (C.D. Cal. Apr.

6   23, 2024) (citation omitted).

7          "First, the overall result and benefit to the class from the litigation is the most important

8   factor in granting a fee award." *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL

9   17722395, at *10 (N.D. Cal. Dec. 15, 2022). Here, Class Counsel secured a record-breaking

10  settlement that will result in settlement payments to class members in the thousands of dollars

11  each. Defendants will also pay up to $200,000 in administration costs, an amount that would

12  typically be paid from the fund and reduce class member payments. *See In re Online DVD-Rental*

13  *Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015). The settlement also provides for prospective

14  relief to prevent future privacy violations. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir.

15  2003) ("[T]he injunctive relief obtained [is] a 'relevant circumstance' in determining what

16  percentage of the common fund class counsel should receive as attorneys' fees[.]").

17         In short, the "exceptional recovery … weighs heavily in favor of a greater-than-

18  benchmark award of attorney fees." *Carlin*, 380 F. Supp. 3d at 1020; *see also Medeiros v. HSBC*

19  *Card Servs., Inc.*, No. CV1509093JVSAFMX, 2017 WL 11632870, at *9 (C.D. Cal. Oct. 23,

20  2017) (awarding fees of 33.33% in $13,000,000 CIPA settlement because the "results achieved

21  exceed the gross per capita recovery in many other recently approved CIPA cases"); *Judson v.*

22  *Goldco Direct, LLC*, No. CV196798PSGPLAX, 2021 WL 8462049, at *7 (C.D. Cal. June 11,

23  2021) (one-third fee award justified in TCPA case where class members would receive $850).

24         Second, the risks involved in the litigation were significant. The vicarious liability theory

25  advanced by Plaintiffs is novel and untested and was complicated by Defendants' contracts that

26  purport to disclaim any principal-agency relationship. Class certification was also far from certain

27  given the long line of cases denying certification of claims under Cal. Penal Code § 632.

28

1 Defendants also raised constitutional and other issues, not to mention a case of this size and

2 complexity would take years to resolve. This factor also favors the requested fee award. *See*

3 *Medeiros*, 2017 WL 11632870, at *10 (noting "multiple risks" involved in CIPA litigation,

4 including class certification, "that the calls … would not qualify as 'confidential

5 communications," consent, and that "aggregated statutory damages would violate due process").

6   Third, Class Counsel undertook this case entirely on a contingent basis with no guarantee

7 of payment. They had to commit to spending potentially years prosecuting this suit and forwent

8 other opportunities to do so. This was a risky endeavor considering the untested legal theories

9 involved and aggressive defendants who sought sanctions the last time Class Counsel brought

10 such a suit. This factor, therefore, favors the requested attorneys' fees.

11   Fourth, Class Counsel has unique experience with privacy violations in the payment

12 processing industry having spent years investigating these practices. *See* Zolna Decl. at ¶ 4. Class

13 Counsel developed a first of its kind legal theory that would hold the banks and processors

14 vicariously liable for the acts of their ISO, making such suits financially viable to pursue when

15 they otherwise would not be. *Id.* Class Counsel also successfully prosecuted a nearly identical suit

16 against some of the same defendants here, which resulted in the largest settlement by total dollar

17 amount ever under CIPA. *Id.* at ¶ 5. The ability to secure such a substantial settlement in this case

18 early in the litigation was a direct result of Class Counsel's track record, experience and

19 knowledge of the payment processing industry, and demonstrated wherewithal to prosecute such

20 suits to conclusion. Because Class Counsel has "'intimate knowledge of the case,' and applied

21 their unique skills to obtain favorable results, this factor should weigh in favor of an increase in

22 the benchmark rate." *Carlin*, 380 F. Supp. 3d at 1021.

23   Lastly, a fee award in the amount of one-third of the fund compares favorably to awards

24 made in similar privacy and telemarketing cases. *See, e.g., Medeiros*, 2017 WL 11632870

25 (awarding fees of 33.33% of $13,000,000 settlement fund in CIPA case); *In re Vizio, Inc.,*

26 *Consumer Priv. Litig.*, No. 816ML02693JLSKES, 2019 WL 12966638, at *4-6 (C.D. Cal. July

27 31, 2019) (awarding fees of 33% of $17,000,000 settlement fund in privacy case that included

28

PLAINTIFFS' MOTION FOR CERTIFICATION AND PREL. APPROVAL  CASE NO. 3:23-cv-06265-AMO

1    CIPA claims); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DADBAM, 2017

2    WL 4180497, at *7-8 (E.D. Cal. Sept. 21, 2017) (awarding fees in the amount of one-third of

3    $25,000,000 fund "because it [was] the third-largest TCPA settlement in the Ninth Circuit in

4    recent years" and class members received "payment of approximately $7.00 for each violation[,]"

5    which is "more on a per-violation basis than many TCPA settlements"); *Vandervort v. Balboa*

6    *Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% award of fees in TCPA class

7    settlement); *CS Wang & Associate, et al. v. Wells Fargo Bank, N.A., et al.*, 1:16-cv-11223 (N.D.

8    Ill.) at Docs. 654 and 687 (33.33% fee award in CIPA settlement).

9         For all these reasons, the fee award requested by Class Counsel is fair and reasonable.

10        **2.    *A lodestar cross-check is not appropriate under the circumstances.***

11        Under both California and Ninth Circuit law, a lodestar cross-check is disfavored when

12    class plaintiffs secure an early, strong settlement. *See Laffitte*, 1 Cal. 5th at 506 ("[T]rial courts

13    have discretion to …forgo a lodestar cross-check and use other means to evaluate the

14    reasonableness of a requested percentage fee"); *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x

15    628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement,

16    and we do so once more.") (citing cases). "A lodestar cross-check is not required in this circuit,

17    and in some cases is not a useful reference point." *Craft v. Cnty. of San Bernardino*, 624 F. Supp.

18    2d 1113, 1122 (C.D. Cal. 2008) (awarding $6,375,000 in fees even though lodestar was

19    $1,200,000); *see also Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021)

20    ("[A] court is not required to reduce a percentage recovery just because it is substantially higher

21    than the lodestar.").

22        This is particularly true here where Class Counsel achieved one of the best, if not the best,

23    settlements ever under CIPA at an early stage of the proceedings. As courts routinely

24    acknowledge, when class counsel "achieve[s] substantial results for the class at an early stage of

25    litigation[,] *** [u]se of a lodestar calculation would punish Plaintiff's counsel for the early

26    proposed settlement, and thus may impede settlement efforts in similar cases." *Lewis v. Starbucks*

27    *Corp.*, No. 2:07-CV-00490-MCEDAD, 2008 WL 4196690, at *7 (E.D. Cal. Sept. 11, 2008); *see*

28

1    *also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal.

2    Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("Under the circumstances presented here,

3    where the early settlement resulted in a significant benefit to the class, the Court finds no need to

4    conduct a lodestar cross-check."); *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011

5    WL 13239039, at *2 (E.D. Cal. July 6, 2011) ("[I]n accordance with Ninth Circuit precedents,

6    district courts within the Ninth Circuit have recognized that a lodestar cross check need not be

7    performed where plaintiff's counsel achieves a significant result through an early settlement.").

8          Here, Class Counsel achieved a substantial and record-breaking settlement that will

9    provide class members with thousands of dollars each—and did so efficiently and relatively early

10    in the litigation. Requiring a lodestar cross-check under such circumstances is unwarranted and

11    would only encourage parties to litigate cases for years in lieu of early settlement efforts.[6]

12        ***3.***     ***The costs and requested incentive awards are fair and reasonable.***

13          Class counsel will also petition for reimbursement of actual unreimbursed costs, which is

14    estimated to be between $30,000-$35,000. *See Zolna Decl.* at ¶ 19. The requested incentive

15    awards of $7,500 to each of the two named Plaintiffs are also consistent with what is typically

16    awarded in class cases. *See Barnard v. CorePower Yoga LLC*, No. 16-CV-03861-HSG, 2018 WL

17    1000400, at *7 (N.D. Cal. Feb. 21, 2018) (approving $8,000 incentive award). Plaintiffs will

18    submit declarations and other materials supporting these amounts with their fee petition.

19

20

---

21    [6] Even if a lodestar cross-check was performed, the requested fees would result in a multiplier of
      approximately 7.77, not including additional time that will be spent on preliminary and final

22    approval and administering the settlement, which is within the acceptable range in the Ninth
      Circuit. *See Zolna Dec.* at ¶ 21; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6

23    (9th Cir. 2002) (surveying lodestar multipliers applied to fee awards in common fund cases,
      "finding a range of .6-19.6"); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007)

24    (affirming fee award based on lodestar multiplier of 6.85, finding that it "falls well within the
      range of multipliers that courts have allowed"); *Vidrio v. United Airlines, Inc.*, No. CV 15-7985

25    PSG (MRWX), 2023 WL 11932248, at *11 (C.D. Cal. June 29, 2023) (awarding fees in the
      amount of one-third of the fund, finding that multiplier of 15 was justified because "Class

26    Counsel … achieved an extraordinary result"); *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-
      03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) (awarding 33.33% fee award,

27    finding that lodestar multipliers of 13.42, 15.42, and 18.15 were "within the surveyed acceptable

28    range in the Ninth Circuit").

1

**D.      The proposed form and method of class notice satisfies due process.**

2

      Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that when the parties reach

3

a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all

4

class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1)(B). Rule 23 further

5

provides that "the court must direct to class members the best notice that is practicable under the

6

circumstances…. The notice may be by one or more of the following: United States mail,

7

electronic means, or other appropriate means." FED. R. CIV. P. 23(c)(2)(B).

8

      Here, class members will receive direct notice of the settlement by mail via a postcard

9

with a detachable claim form. A settlement website will also be established that will include a

10

Long-Form Notice, the lawsuit, and other relevant information, and will also allow class members

11

to submit a claim online. The notices clearly describe the nature of the action, the definition of the

12

class certified, the benefits of the settlement, how to opt-out or object to the settlement, and how

13

class members' legal rights are affected by remaining in or opting out of the class. Notice of the

14

settlement will also be published via the internet, which will include a link to the website. The

15

proposed notice plan is the best notice practicable and affords class members with all due process

16

protections required by Rule 23. *See Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS,

17

2018 WL 11373654, at *1 (N.D. Cal. Aug. 21, 2018) ("direct mail postcard notice supplemented

18

with additional information accessible via the internet fully meets the requirements of Rule 23");

19

*McCabe*, 2015 WL 3990915, at *11-12 (approving notice plan that included direct mail, internet

20

ads, and website). Accordingly, the proposed notice plan should be approved.

21

      **WHEREFORE,** Plaintiffs request the Court to (i) certify this case as a class action for

22

settlement purposes only, appoint Plaintiffs Aguilar Auto Repair, Inc. and Central Coast Tobacco

23

Co., LLC as class representatives of the settlement class, and appoint Myron M. Cherry, Jacie C.

24

Zolna, and Benjamin R. Swetland as class counsel for the settlement class; (ii) grant preliminary

25

approval of the settlement; (iii) direct that notice be sent in accordance with the terms of the

26

Settlement Agreement; and (iv) set a final approval hearing no earlier than 112 days (16 weeks)

27

after entry of an order preliminarily approving the settlement.

28

Dated: November 7, 2024

/s/ *Jacie C. Zolna*
MYRON M. CHERRY & ASSOCIATES, LLC
Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
30 N. LaSalle St., Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100

ANDRUS ANDERSON LLP
Jennie Lee Anderson
jennie@andrusanderson.com
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400

*Attorneys for Plaintiffs and the Class*

1

*__CERTIFICATE OF SERVICE__*

2          At the time of service, I was over 18 years of age and not a party to this action. I am

3    employed in the County of Cook, State of Illinois. My business address is 30 N. LaSalle St., Suite

4    2300, Chicago, Illinois 60602.

5          On November 7, 2024, I served a true copy of the following document described as

6    **PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND**

7    **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** on all parties to this

8    action, listed below, **BY CM/ECF NOTICE OF ELECTRONIC FILING**. I electronically filed

9    the document with the Clerk of the Court by using the CM/ECF system. Participants in the case

10   who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case

11   who are not registered CM/ECF users will be served by mail or by other means permitted by the

12   court rules:

13   DELAHUNTY & EDELMAN LLP               KING & SPALDING LLP
     Will Edelman                          Samuel R. Diamant
14   wedelman@delawllp.com                 sdiamant@kslaw.com
     Micah Nash                            601 S. California Avenue, Suite 100
15   mnash@delawllp.com                    Palo Alto, California 94304
     4 Embarcadero Center, Suite 1400
16   San Francisco, California 94111       KING & SPALDING LLP
     *Attorneys for The Credit*            Phyllis B. Sumner
17   *Wholesale Company, Inc.*             psumner@kslaw.com
                                           Billie B. Pritchard
18   POLSINELLI LLP                        bpritchard@kslaw.com
     John W. Peterson                      1180 Peachtree Street, NE, Suite 1600
19   john.peterson@polsinelli.com          Atlanta, Georgia 30309
     Matthew S. Knoop
20   mknoop@polsinelli.com                 *Attorneys for Priority Technology Holdings, Inc.*
     501 Commerce Street, Suite 1300       *and Priority Payment Systems, LLC*
21   Nashville, Tennessee 37203
     *Attorneys for Wells Fargo*
22   *Bank, N.A.*

23          Executed on November 7, 2024, in Chicago, Illinois.

24

25                                         /s/ *Jacie C. Zolna*_____
                                           Jacie C. Zolna

26

27

28