Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Tel: 415-986-1400
jennie@andrusanderson.com

Myron M. Cherry (SBN 50278)
Jacie C. Zolna (*pro hac vice*)
Benjamin R. Swetland (*pro hac vice*)
**MYRON M. CHERRY & ASSOCIATES, LLC**
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Tel: 312-372-2100
mcherry@cherry-law.com
jzolna@cherry-law.com
bswetland@cherry-law.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

AGUILAR AUTO REPAIR, INC. and CENTRAL COAST TOBACCO CO., LLC, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WELLS FARGO BANK, N.A., PRIORITY TECHNOLOGY HOLDINGS, INC., PRIORITY PAYMENT SYSTEMS, LLC and THE CREDIT WHOLESALE COMPANY, INC.,

Defendants.

Case No. 3:23-cv-06265-LJC

Honorable Magistrate Judge Lisa J. Cisneros

**PETITION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Date: May 20, 2025
Time: 10:30 AM
Courtroom: G – 15th Floor

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 20, 2025, at 10:30 AM, the undersigned will appear before the Honorable Magistrate Judge Lisa J. Cisneros in Courtroom G, 15th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, and shall then and there present the Petition for Attorneys' Fees, Costs, and Incentive Awards.

Plaintiffs and Class Counsel move the Court for an order awarding Class Counsel attorneys' fees in the amount of $6,500,000 and costs in the amount of $33,437.25 and incentive awards of $7,500 to each of the two Plaintiffs. This petition is based on the following Memorandum of Points and Authorities, as well as all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this petition.

**TABLE OF CONTENTS**


**INTRODUCTION** ........ 1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ........ 2-4

- **A. Defendants and the payment processing industry** ........ 2
- **B. Class Counsel's investigation of and prior litigation involving privacy violations in the payment processing industry** ........ 2-3
- **C. The current lawsuit** ........ 3-4

**SUMMARY OF SETTLEMENT TERMS** ........ 4-5

**ARGUMENT** ........ 5-12

- **A. The requested award of attorneys' fees is reasonable** ........ 5-11
  - ***1. Attorneys' fees should be awarded using the percentage of the fund method*** ........ 5-9
  - ***2. A lodestar cross-check is not appropriate under the circumstances*** ........ 9-11
- **B. The costs expended were fair and reasonable** ........ 11
- **C. The requested incentive awards are fair and reasonable** ........ 12

## INTRODUCTION

The settlement secured by Class Counsel here is the second-highest amount ever recovered for a class under the California Invasion of Privacy Act ("CIPA"). Moreover, the compensation rate per class member will far exceed all other large CIPA settlements. Here, approximately 92,668 class members received approximately 149,010 calls. *See* Declaration of Jacie C. Zolna ("Zolna Decl.") at ¶ 10, attached as Ex. A. Thus, the settlement provides a recovery of $210.43 per class member and $130.86 per call. *Id*. at ¶ 12. Based on anticipated claims rates, class members will likely receive individual settlement payments in the *thousands of dollars each*, even *after* the payment of requested attorneys' fees, costs, and incentive awards. *Id.*

CIPA settlements that exceed $100 per class member—like this one—are extremely rare. Most CIPA class actions settle in the range of less than $1 to approximately $60 per class member. *Id.* at ¶ 14. The recovery rates secured by Class Counsel here are also extremely unusual given the overall size of this settlement. Only a handful of CIPA class actions have settled for over $10 million (as this one does) and they all involved hundreds of thousands or millions of class members with recovery rates as low as $1.06 per member. *Id.* at ¶ 13. The settlement reached here far exceeds that benchmark. In addition to this record-breaking monetary relief, Class Counsel also secured prospective relief that prohibits future calls from being recorded without disclosure.

In recognition of their work and risk in prosecuting this case on behalf of the class, Class Counsel petitions the Court for an award of attorneys' fees in an amount equal to one-third (33.33%) of the Settlement Fund. This request is fair and reasonable considering the benefits Class Counsel secured for the class, the novel and difficult nature of the claims asserted, and the risks undertaken in prosecuting this lawsuit. The named Plaintiffs have also admirably fulfilled their duties as class representatives, including taking on the risk of being named plaintiffs and traveling to Oakland for the settlement conference with Magistrate Judge Ryu. For these reasons, Class Counsel respectfully requests the Court to award the requested attorneys' fees and costs, as well as the incentive awards for the named Plaintiffs.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendants and the payment processing industry.

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") runs a nationwide payments processing business. *See* Amended Complaint at ¶ 2 (Doc. 29). This business processes millions of credit and debit card transactions around the country every day. *Id.* Every business in the United States that accepts payment by Visa or Mastercard must have a relationship with a bank, like Wells Fargo, that is a member of the Visa or Mastercard payment networks. *Id.* at ¶ 29. These banks employ sales and marketing companies called Independent Sales Organizations ("ISOs") or Member Service Providers ("MSPs") to manage, market, and sell their credit and debit card processing services to businesses. *Id.* at ¶¶ 3, 33. The payments processing industry is self-regulated by Visa and Mastercard. *Id.* at ¶ 6. Both of these payment networks publish extensive regulations that define the roles of banks, processors, and sales companies. *Id.*

In this case, Defendants The Credit Wholesale Company, Inc. ("Wholesale") and Priority Technology Holdings, Inc. and Priority Payment Systems, LLC (together, "Priority") were ISO/MSPs of Wells Fargo. *Id.* at ¶ 35. Priority was a much larger "processor" that provided technological expertise to Wells Fargo in addition to doing sales and marketing for the bank. *Id.* Priority also managed and supervised the work of Wholesale, a smaller ISO/MSP that focused exclusively on soliciting merchants. *Id.* at ¶¶ 36-38. It did so by employing telemarketers to make cold calls to merchants around the country. *Id.* at ¶ 39. The purpose of these calls was to schedule in person appointments with a sales representative who would attempt to sell Wells Fargo's payment processing services. *Id.* at ¶ 40. Wholesale recorded these appointment-setting phone calls without ever warning the recipients. *Id.* at ¶¶ 43-49.

### B. Class Counsel's investigation of and prior litigation involving privacy violations in the payment processing industry.

For several years, Class Counsel has actively investigated privacy violations by ISOs in the payment processing industry. *See* Zolna Decl. at ¶ 4. ISOs, however, are generally smaller telemarketing companies against whom it would be difficult to recover any judgment or even a modest settlement in a CIPA case. *Id.* Class Counsel developed a legal theory that would hold the

larger banks and processors vicariously liable for the acts of their ISO, relying in part on the Visa and Mastercard rules. *Id.* To the Class Counsel's knowledge, no such legal theory had ever been advanced in a CIPA case. *Id.*

In 2016, the Firm tested this legal theory in a class action lawsuit against, among others, Wells Fargo, one of its processors, and one of its ISOs on behalf of California businesses whose phone conversations were recorded without consent in violation of CIPA. *Id.* at ¶ 5. Wells Fargo and the other defendants moved for sanctions against plaintiffs and Class Counsel asserting that the suit was frivolous. *Id.* That motion was denied, as were numerous motions to dismiss, and the Firm proceeded to prosecute the suit for six years. *Id.* After class certification was fully briefed and awaiting a ruling, the suit settled for a total of $78,000,000, which represents the largest settlement ever in a CIPA class action. *Id.*[1]

**C. The current lawsuit.**

This lawsuit was filed in state court on October 10, 2023 on behalf of a proposed class of small businesses in California who received sales appointment-setting calls from Wholesale. *See* Complaint (Doc. 1-2). The lawsuit alleges, among other things, that Wells Fargo and Priority were in a principal-agent relationship with Wholesale and that, in the scope of that relationship, Wholesale violated CIPA by recording telemarketing calls without any warning that the recording was occurring. On December 4, 2023, Wells Fargo removed the suit to the United States District Court for the Northern District of California. *See* Notice of Removal (Doc. 1). On February 16, 2024, Plaintiffs filed an amended complaint. *See* Amended Complaint (Doc. 29).

The Parties agreed to participate in an Early Settlement Conference and, as part of that process, exchanged information, including, but not limited to, the contracts amongst Defendants and data on call volume obtained from third parties via subpoena. The parties also exchanged lengthy and substantive mediation statements, which spelled out their respective factual and legal positions. On August 15, 2024, the Parties participated in an Early Settlement Conference before

---

[1] Class Counsel's concern about bringing suit solely against an ISO for CIPA violations proved correct. The ISO in the *Wang* case declared bankruptcy during the litigation, which resulted in the ISO being dismissed from the case entirely. *See* Zolna Decl. at ¶ 6.

Magistrate Judge Donna M. Ryu during which the Parties made progress toward, but were unable to reach, a settlement. The Parties thereafter continued to engage in settlement discussions with the assistance of Magistrate Judge Ryu, which resulted in the Parties reaching the settlement set forth herein. It is estimated that the class includes approximately 92,668 potential members who received approximately 149,010 calls. *See* Zolna Decl. at ¶ 10. The average length of the calls at issue is approximately 45 seconds, with many lasting less than 15 seconds. *Id.*

**SUMMARY OF SETTLEMENT TERMS**

Defendants will pay $19,500,000 (the "Settlement Fund") to create a non-reversionary common fund for the benefit of the class. *See* Settlement Agreement at ¶ 1, attached as Ex. B. Defendants will also pay settlement administration costs up to $200,000. *Id.* at ¶ 10. Each class member who does not opt-out shall be eligible for a cash payment for each call that is covered under the class definition ("Eligible Call"). *Id.* at ¶ 2. To receive a settlement payment, class members need to submit a claim form either by mail or online. *Id.* at ¶ 4. The claim form is simple and non-cumbersome, and postage is pre-paid for its return mailing to the Settlement Administrator. *Id.* at ¶ 7.a. and Ex. 1. Each settlement payment will be in an amount equal to the Net Settlement Fund divided by all Eligible Calls that were made to class members who submit a claim up to a maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[2] Class members who received multiple Eligible Calls are entitled to a settlement payment for each Eligible Call. *Id.*

The parties agreed to retain Verita Global (the "Settlement Administrator") to administer the settlement. *Id.* at ¶ 5. A postcard notice will be sent by first class mail to each class member. *Id.* at ¶ 7.a. A Long Form Notice will also be published on the settlement website. *Id.* For any notice that is returned with a forwarding address, the notice and claim form will be re-mailed to the updated address. *Id.* at ¶ 7.b. For any notice that is returned without forwarding address information, the Settlement Administrator will use commercially reasonable efforts to locate a new address for the class member to mail the notice and claim form. *Id.* The Settlement Administrator will also publish a website that will include the Settlement Agreement, the

[2] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

Amended Complaint, the Long Form Notice, and other relevant documents, and will have the ability to accept claims online. *Id.* at ¶ 8. Notice of the settlement will also be published via the internet, which will contain a link to the settlement website *Id.* at ¶ 7.c. The Settlement Administrator will maintain a toll-free number to receive calls regarding the settlement. *Id.* at ¶ 9. Class members may opt-out or object to the settlement. *Id.* at ¶¶ 19-20

The settlement includes several features designed to ensure that the entire fund is distributed to the class. For example, if the initial claims rate is insufficient to exhaust the entire Net Settlement Fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim will be provided. *Id.* at ¶ 28. All reasonable efforts will also be used to ensure that class members who submit a claim receive and cash their settlement checks, including the reissuance of checks. *Id.* at ¶ 16. If funds still remain after 18 months, the Settlement Administrator will distribute those funds on a *pro rata* basis to class members who submitted a claim. *Id.* at ¶ 30. Only after those efforts have been exhausted will any remainder be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *Id.*; *see also* EFF website, https://www.eff.org/about; *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving EFF as *cy pres* recipient in CIPA settlement). Under no circumstances will any of the Settlement Fund revert to Defendants. *See* Settlement Agreement at ¶¶ 28, 30.

## ARGUMENT

### A. The requested award of attorneys' fees is fair and reasonable.

#### *1. Attorneys' fees should be awarded using the percentage of the fund method.*

Considering the record-breaking monetary benefits conferred on the class, the risks undertaken by Class Counsel, and Class Counsel's unique knowledge and experience in this area of the law, the requested attorneys' fees and costs are fair and reasonable and should be approved. Federal courts sitting in diversity, like here, apply state law in determining both a party's rights to attorneys' fees and the method of calculating them. *See Mangold v. Cal. Pub. Util. Comm'n*, 67

F.3d 1470, 1478 (9th Cir. 1995). The California Supreme Court has endorsed the percentage of the fund method in awarding fees when class counsel's efforts have created a common fund for the benefit of the class:

> We join the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created. The recognized advantages of the percentage method—including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation.

*Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 503 (2016). Indeed, "the percentage-of-the-benefit approach [is] the preferred method for determining fees in common fund cases." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 31 (2000).

"While the California Supreme Court recognized the Ninth Circuit's twenty-five benchmark for percentage awards in common fund cases, no such benchmark has been adopted under California law." *Ramirez v. Merrill Gardens, LLC*, No. 1:22-CV-00542-SAB, 2024 WL 3011142, at *25 (E.D. Cal. June 11, 2024) (citing *Laffitte*, 1 Cal. 5th 480 (affirming award of fees to class counsel in the amount of 33.33% of the $19,000,000 fund)). Rather, "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (citing cases).

In line with California precedent, Class Counsel requests attorneys' fees in the amount of one-third ($6,500,000) of the $19,500,000 common fund. The requested fees are more than reasonable considering the substantial benefits conferred on the class. As noted above, CIPA class actions typically settle in the range of less than $1 to $60 per class member. A small number of exceptional CIPA settlements have settled in the range of $100-$150 per class member. The settlement here—$210.43 per class member—far exceeds even the largest, outlier settlements. Moreover, even *after* payment of the requested fees, costs, and incentive awards, class members will likely receive individual settlement payments in the *thousands of dollars*—all for an intrusion of privacy that lasted, on average, 45 seconds. Assuming a 10% claims rate, the settlement will

provide a recovery of nearly *$70,000 per hour* of privacy intrusion.[3] Under any standard, Class Counsel obtained a phenomenal and unprecedented result that more than justifies the requested attorneys' fees.

Even under Ninth Circuit law, its 25% benchmark can be adjusted upward depending on "(1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards made in similar cases." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1019 (E.D. Cal. 2019) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)). These factors also support the requested attorneys' fees. Indeed, "in most common fund cases, the award exceeds that benchmark." *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *13 (C.D. Cal. Apr. 23, 2024) (citation omitted).

"First, the overall result and benefit to the class from the litigation is the most important factor in granting a fee award." *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *10 (N.D. Cal. Dec. 15, 2022). Here, Class Counsel secured a record-breaking settlement that will result in settlement payments to class members in the thousands of dollars each. Defendants will also pay up to $200,000 in administration costs, an amount that would typically be paid from the fund and reduce class member payments. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015). The settlement also provides for prospective relief to prevent future privacy violations. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[T]he injunctive relief obtained [is] a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees[.]").

In short, the "exceptional recovery … weighs heavily in favor of a greater-than-benchmark award of attorney fees." *Carlin*, 380 F. Supp. 3d at 1020; *see also Medeiros v. HSBC Card Servs., Inc.*, No. CV1509093JVSAFMX, 2017 WL 11632870, at *9 (C.D. Cal. Oct. 23,

---

[3] This figure was calculated as follows: 10% of 149,010 calls = 14,901. Net Settlement Fund of $12,950,000 ($19,500,000 - $6,500,000 in attorney's fees, $35,000 in costs, and $15,000 in incentive awards) divided by 14,901 class = $869.07 average settlement payment per call. Using the average length of 45 seconds per call and extrapolating the $869.07 average settlement payment per call to a total of one hour equals $69,525.60 per hour.

2017) (awarding fees of 33.33% in $13,000,000 CIPA settlement because the "results achieved exceed the gross per capita recovery in many other recently approved CIPA cases"); *Judson v. Goldco Direct, LLC*, No. CV196798PSGPLAX, 2021 WL 8462049, at *7 (C.D. Cal. June 11, 2021) (one-third fee award justified in TCPA case where class members would receive $850).

Second, the risks involved in the litigation were significant. The vicarious liability theory advanced by Plaintiffs is novel and untested and was complicated by Defendants' contracts that purport to disclaim any principal-agency relationship. *See* Defendants' contracts, attached as Group Ex. C. Class certification was also far from certain given the long line of cases denying certification of claims under Cal. Penal Code § 632. *See Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467 (2014); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013). Defendants also raised constitutional and other issues, not to mention a case of this size and complexity would take years to resolve. This factor also favors the requested fee award. *See Medeiros*, 2017 WL 11632870, at *10 (noting "multiple risks" involved in CIPA litigation, including class certification, "that the calls … would not qualify as 'confidential communications," consent, and that "aggregated statutory damages would violate due process").

Third, Class Counsel undertook this case entirely on a contingent basis with no guarantee of payment. This risk should not be viewed in hindsight of a successful settlement, which was never guaranteed. At the outset, Class Counsel had to commit to spending years prosecuting this suit, without compensation, all while forgoing other opportunities to do so. This was a risky endeavor considering the untested legal theories involved and aggressive defendants who sought sanctions the last time Class Counsel brought such a suit. This factor, therefore, favors the requested attorneys' fees.

Fourth, Class Counsel has unique experience with privacy violations in the payment processing industry having spent years investigating these practices. *See* Zolna Decl. at ¶ 4. Class Counsel developed a first of its kind legal theory that would hold the banks and processors vicariously liable for the acts of their ISO, making such suits financially viable to pursue when

they otherwise would not be. *Id.* Class Counsel also successfully prosecuted a previous suit against some of the same defendants here, which resulted in the largest settlement by total dollar amount ever under CIPA. *Id.* at ¶ 5. The ability to secure such a substantial settlement in this case early in the litigation was a direct result of Class Counsel's track record, experience and knowledge of the payment processing industry, and demonstrated wherewithal to prosecute such suits to conclusion. Because Class Counsel has "'intimate knowledge of the case,' and applied their unique skills to obtain favorable results, this factor should weigh in favor of an increase in the benchmark rate." *Carlin*, 380 F. Supp. 3d at 1021.

Lastly, a fee award in the amount of one-third of the fund compares favorably to awards made in similar privacy and telemarketing cases. *See, e.g., Medeiros*, 2017 WL 11632870 (awarding fees of 33.33% of $13,000,000 settlement fund in CIPA case); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 816ML02693JLSKES, 2019 WL 12966638, at *4-6 (C.D. Cal. July 31, 2019) (awarding fees of 33% of $17,000,000 settlement fund in privacy case that included CIPA claims); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DADBAM, 2017 WL 4180497, at *7-8 (E.D. Cal. Sept. 21, 2017) (awarding fees in the amount of one-third of $25,000,000 fund "because it [was] the third-largest TCPA settlement in the Ninth Circuit in recent years" and class members received "payment of approximately $7.00 for each violation[,]" which is "more on a per-violation basis than many TCPA settlements"); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% award of fees in TCPA class settlement); *CS Wang & Associate, et al. v. Wells Fargo Bank, N.A., et al.*, 1:16-cv-11223 (N.D. Ill.) at Docs. 654 and 687 (33.33% fee award in CIPA settlement).

For all these reasons, the fee award requested by Class Counsel is fair and reasonable.

***2. A lodestar cross-check is not appropriate under the circumstances.***

Under both California and Ninth Circuit law, a lodestar cross-check is disfavored when class counsel secures an early, strong settlement. *See Laffitte*, 1 Cal. 5th at 506 ("[T]rial courts have discretion to …forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee"); *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x

628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more.") (citing cases). "A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) (awarding $6,375,000 in fees even though lodestar was $1,200,000); *see also Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) ("[A] court is not required to reduce a percentage recovery just because it is substantially higher than the lodestar.").

This is particularly true here where Class Counsel achieved one of the best, if not the best, settlements ever under CIPA at an early stage of the proceedings. As courts routinely acknowledge, when class counsel "achieve[s] substantial results for the class at an early stage of litigation[,] *** [u]se of a lodestar calculation would punish Plaintiff's counsel for the early proposed settlement, and thus may impede settlement efforts in similar cases." *Lewis v. Starbucks Corp.*, No. 2:07-CV-00490-MCEDAD, 2008 WL 4196690, at *7 (E.D. Cal. Sept. 11, 2008); *see also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) ("[I]n accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement.").

Here, Class Counsel achieved a substantial and record-breaking settlement that will provide class members with thousands of dollars each—and did so efficiently and relatively early in the litigation. Requiring a lodestar cross-check under such circumstances is unwarranted and would only encourage parties to litigate cases for years in lieu of early settlement efforts.

But even if a lodestar cross-check was performed, the requested fees would result in a current multiplier of 6.99, not including additional time that will be spent on final approval and administering the settlement, which is within the acceptable range in the Ninth Circuit. *See* Zolna

Dec. at ¶¶ 16-20; Declaration of Jennie Anderson ("Anderson Decl.") at ¶ 4, attached as Ex. D; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (surveying lodestar multipliers applied to fee awards in common fund cases, "finding a range of .6-19.6"); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming fee award based on lodestar multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Vidrio v. United Airlines, Inc.*, No. CV 15-7985 PSG (MRWX), 2023 WL 11932248, at *11 (C.D. Cal. June 29, 2023) (awarding fees in the amount of one-third of the fund, finding that multiplier of 15 was justified because "Class Counsel … achieved an extraordinary result"); *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) (awarding 33.33% fee award, finding that lodestar multipliers of 13.42, 15.42, and 18.15 were "within the surveyed acceptable range in the Ninth Circuit"). Thus, Class Counsel's fees are justified even under a lodestar analysis.[4]

**B. The costs expended were fair and reasonable.**

The costs incurred were also reasonable and necessary. *See* Zolna Decl. at ¶ 18 and Ex. 3; Anderson Decl. at ¶ 7. All of these costs were necessary to properly prosecute this action. Accordingly, the Court should also approve the reimbursement of $33,437.25 in costs.

[4] Class Counsel's hourly rates—$825 for a partner with 14 years of experience, $950 for partner with 23 years of experience, and $1,600 for managing partner with over 50 years of experience—are consistent with the market rate for class action lawyers in California and elsewhere. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving hourly rates for class counsel ranging as high as $1,600 for partners and $790 for associates); *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal. Dec. 15, 2022) (finding hourly rates of $1,325, $1,200, and $985 to be "in line with rates prevailing in this community for similar services by lawyers of reasonably comparable skill, experience and reputation"); *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2022 WL 45057, at *7 (N.D. Cal. Jan. 5, 2022) (approving rates ranging from $625 to $1,145 for partners and counsel and $425 to $650 for associates); *see also* Rubino, Kathryn, *Want An Elite Senior Partner On Your Case? Be Ready To Pay $3000 An Hour*, ABOVE THE LAW, https://abovethelaw.com/2024/09/want-an-elite-senior-partner-on-your-case-be-ready-to-pay-3000-an-hour/ (noting that some law firms are charging hourly rates as high as $3,000 and "senior partners billing rates will average $2,100 in 2024, with partners averaging $1,900/hour *** third-year associates with rates over $1,000 *** [and] first-year associates are approaching $1,000 at a handful of firms").

**C. The requested incentive awards are fair and reasonable.**

The proposed incentive awards of $7,500 to each of the two named Plaintiffs are fair and reasonable and should also be approved. "Incentive *awards* are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (italics in original). "Such awards … are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.

Here, Plaintiffs took the initiative to be named in the lawsuit and stayed actively involved in the litigation, routinely communicating with Class Counsel, and reviewing pleadings and other case materials. *See* Declaration of Francisco Aguilar, attached as Ex. E; Declaration of Wyatt Miller, attached as Ex. F. The principals of both Plaintiffs also attended and were active participants in the Early Settlement Conference before the Magistrate Judge Donna M. Ryu. *Id.* The Early Settlement Conference lasted all day and required out of town travel for both Plaintiffs and an overnight stay in Oakland, California, which interfered with Plaintiffs' ability to operate their small businesses on these days. *Id.* The incentive awards sought for Plaintiffs are not conditioned on their support for the settlement. *Id.*

Accordingly, the relatively modest incentive awards of $7,500 each are more than justified. Indeed, the requested incentive awards are comparable to or less than what courts typically award in CIPA and other privacy class cases. *See McCabe*, 2016 WL 491332, at *2 (approving incentive awards of $7,500 and $10,000 in CIPA class settlement); *Mirkarimi v. Nevada Prop. 1, LLC*, No. 12CV2160 BTM (DHB), 2016 WL 795878, at *6 (S.D. Cal. Feb. 29, 2016) (approving $30,000 incentive award in CIPA class settlement); *Reed v. 1-800 Contacts, Inc.*, No. 12-CV-02359 JM BGS, 2014 WL 29011, at *10 (S.D. Cal. Jan. 2, 2014) (approving $10,000 incentive award in CIPA class settlement); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DADBAM, 2017 WL 4180497, at *12 (E.D. Cal. Sept. 21, 2017) (approving $15,000 incentive award in TCPA class settlement).

The incentive awards, therefore, should also be approved

**WHEREFORE,** Plaintiffs and Class Counsel respectfully request the Court to award Class Counsel attorneys' fees in the amount of $6,500,000 and costs in the amount of $33,437.25 and to award incentive awards of $7,500 to each of the Plaintiffs.

Dated: February 27, 2025

/s/ *Jacie C. Zolna*
MYRON M. CHERRY & ASSOCIATES, LLC
Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
30 N. LaSalle St., Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100

ANDRUS ANDERSON LLP
Jennie Lee Anderson
jennie@andrusanderson.com
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400

*Attorneys for Plaintiffs and the Class*

# ***CERTIFICATE OF SERVICE***

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 30 N. LaSalle St., Suite 2300, Chicago, Illinois 60602.

On February 27, 2025, I served a true copy of the following document described as **PETITION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** on all parties to this action, listed below, **BY CM/ECF NOTICE OF ELECTRONIC FILING**. I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules:

DELAHUNTY & EDELMAN LLP
Will Edelman
wedelman@delawllp.com
Micah Nash
mnash@delawllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
*Attorneys for The Credit Wholesale Company, Inc.*

POLSINELLI LLP
John W. Peterson
john.peterson@polsinelli.com
Matthew S. Knoop
mknoop@polsinelli.com
501 Commerce Street, Suite 1300
Nashville, Tennessee 37203
*Attorneys for Wells Fargo Bank, N.A.*

KING & SPALDING LLP
Samuel R. Diamant
sdiamant@kslaw.com
601 S. California Avenue, Suite 100
Palo Alto, California 94304

KING & SPALDING LLP
Phyllis B. Sumner
psumner@kslaw.com
Billie B. Pritchard
bpritchard@kslaw.com
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309

*Attorneys for Priority Technology Holdings, Inc. and Priority Payment Systems, LLC*

Executed on February 27, 2025, in Chicago, Illinois.

/s/ *Jacie C. Zolna*
Jacie C. Zolna