Jennie Lee Anderson (SBN 203586)
**ANDRUS ANDERSON LLP**
155 Montgomery Street, Suite 900
San Francisco, California 94104
Tel: 415-986-1400
jennie@andrusanderson.com

Myron M. Cherry (SBN 50278)
Jacie C. Zolna (*pro hac vice*)
Benjamin R. Swetland (*pro hac vice*)
**MYRON M. CHERRY & ASSOCIATES, LLC**
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Tel: 312-372-2100
mcherry@cherry-law.com
jzolna@cherry-law.com
bswetland@cherry-law.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AGUILAR AUTO REPAIR, INC. and CENTRAL COAST TOBACCO CO., LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., PRIORITY TECHNOLOGY HOLDINGS, INC., PRIORITY PAYMENT SYSTEMS, LLC and THE CREDIT WHOLESALE COMPANY, INC.,<br><br>Defendants. | Case No. 3:23-cv-06265-LJC<br><br>Honorable Magistrate Judge Lisa J. Cisneros<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 20, 2025<br>Time: 2:30 PM<br>Courtroom: G – 15th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 20, 2025, at 2:30 PM, the undersigned will appear before the Honorable Magistrate Judge Lisa J. Cisneros in Courtroom G, 15th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, and shall then and there present Plaintiffs' Motion for Final Approval of Class Action Settlement.

Plaintiffs move the Court for an order granting final approval of the settlement of this class action and entering a final judgment. This motion is based on the following Memorandum of Points and Authorities, as well as all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this motion.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .............................................1

SUMMARY OF SETTLEMENT TERMS ............................................................................ 1-2

SETTLEMENT ADMINISTRATION ................................................................................... 2-3

ARGUMENT ................................................................................................................................ 3-11

    A.    The strength of Plaintiffs' case ...................................................................... 4-5

    B.    The risk, expense, complexity, and likely duration of further litigation ...... 5-6

    C.    The risk of maintaining class action status throughout the trial .......................6

    D.    The amount offered in settlement ................................................................. 7-8

    E.    The extent of discovery completed and the stage of the proceedings ...............8

    F.    The experience and views of counsel ............................................................ 8-9

    G.    The presence of a governmental participant .....................................................9

    H.    The reaction of the class members to the proposed settlement .................. 9-10

    I.    The Rule 23 factors also favor final approval .................................................11

## INTRODUCTION

The $19,500,000 settlement reached here is the second largest ever under the California Invasion of Privacy Act ("CIPA") and the per class member recovery far surpasses all other prior CIPA settlements. As a result, class members are in line to receive substantial settlement payments. The estimated average settlement payment—even after payment of the requested attorneys' fees, costs, and incentive awards—is $680.49 per class member. This is an extraordinary result considering that most CIPA class actions settle in the range of $1 to $60 per class member. *See* Declaration of Jacie C. Zolna ("Zolna Decl.") at ¶ 10, attached as Ex. A. In addition to the substantial monetary recovery, the settlement also provides prospective relief that prohibits future calls from being recorded without disclosure—preventing tens of thousands of future privacy violations.

Not surprisingly, the reaction to the settlement amongst the class was overwhelmingly positive. Of the 102,416 class members, only one elected to opt-out of the settlement. More significantly, *not a single class member objected* to the settlement or the requested attorneys' fees, costs, and incentive awards. The number of class members who actively participated in the settlement, on the other hand, was substantial: 18,918 claims were submitted.

For these reasons, and those that follow, Plaintiffs respectfully request the Court to grant final approval of the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs incorporate by reference as if fully set forth herein the Factual and Procedural Background section set forth in the Petition for Attorneys' Fees, Costs, and Incentive Awards at 2-4 (Doc. 89).

## SUMMARY OF SETTLEMENT TERMS

Defendants will pay $19,500,000 (the "Settlement Fund") to create a non-reversionary common fund for the benefit of the class. *See* Settlement Agreement at ¶ 1, attached as Ex. B. Defendants will also pay settlement administration costs up to $200,000. *Id.* at ¶ 10. Each class member who does not opt-out shall be eligible for a cash payment for each call that is covered under the class definition ("Eligible Call"). *Id.* at ¶ 2. To receive a settlement payment, class

members needed to submit a claim form either by mail or online. *Id.* at ¶ 4. The claim form is simple and non-cumbersome, and postage was pre-paid for its return mailing to the Settlement Administrator. *Id.* at Ex. 1. Each settlement payment will be in an amount equal to the Net Settlement Fund divided by all Eligible Calls that were made to class members who submit a claim up to a maximum of $5,000 for each Eligible Call. *Id.* at ¶ 2.[1] Class members who received multiple Eligible Calls are entitled to a settlement payment for each Eligible Call. *Id.*

The settlement includes several features designed to ensure that the entire fund is distributed to the class. For example, if the initial claims rate was insufficient to exhaust the entire Net Settlement Fund at the maximum payment of $5,000 per Eligible Call, then an additional opportunity for class members to submit a claim would have been provided. *Id.* at ¶ 28. All reasonable efforts will also be used to ensure that class members who submitted a claim receive and cash their settlement checks, including the reissuance of checks. *Id.* at ¶ 16. If funds still remain after 18 months, the Settlement Administrator will distribute those funds on a *pro rata* basis to class members who submitted a claim. *Id.* at ¶ 30. Only after those efforts have been exhausted will any remainder be remitted to the Electronic Frontier Foundation ("EFF") as a *cy pres* recipient, whose mission includes protecting privacy interests and "fight[ing] illegal surveillance." *Id.*; *see also* EFF website, https://www.eff.org/about; *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (approving EFF as *cy pres* recipient in CIPA settlement). Under no circumstances will any of the Settlement Fund revert to Defendants. *See* Settlement Agreement at ¶¶ 28, 30.

**SETTLEMENT ADMINISTRATION**

Pursuant to the Settlement Agreement, the parties retained Verita Global (the "Settlement Administrator") to administer the settlement. *See* Settlement Agreement at ¶ 5. The Settlement Administrator implemented the notice plan in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. *See* Declaration of Frank Cordova ("Cordova Decl.") at ¶¶ 8-13, attached as Ex. C.

---

[1] CIPA provides for statutory damages up to $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

On February 14, 2025, postcard notice was sent by direct mail to class members' last known addresses. *Id.* at ¶ 8. The Settlement Administrator also published a website that included a copy of a Long-Form Notice, the operative complaint, the Petition for Attorneys' Fees, Costs, and Incentive Awards, and other information. *Id.* at ¶ 12 As of May 12, 2025, the settlement website had 1,653,912 sessions/hits (active visits to the website) and 8,941,327 page views of the website. *Id.* The Settlement Administrator also established a toll-free settlement hotline and caused notice of this settlement to be delivered through approximately 7,328,755 impressions on various websites targeting California residents. *Id.* at ¶¶ 11, 13. The Settlement Administrator sent out all notices required under the Class Action Fairness Act ("CAFA"). *Id.* at ¶¶ 2-3. The Settlement Administrator received no objection or other response from any of governmental entities. *Id.* at ¶ 4.

The class includes approximately 102,416 class members who received approximately 149,010 calls. *Id.* at ¶¶ 5-7.[2] Approximately 18,918 claims were submitted. *Id.* at ¶ 14. The estimated average settlement payment is $680.49 per class member, even after payment of the requested attorneys' fees, costs, and incentive awards. *Id.* at ¶¶ 15-16. There were enough claims submitted during the initial claims period to exhaust the entire Settlement Fund and, therefore, no additional claims period was necessary under the Settlement Agreement. Only one class member elected to opt-out of the settlement. *Id.* at ¶ 17. Not a single class member objected to the settlement or the requested attorneys' fees, costs, and incentive awards. *Id.* at ¶ 18.

## ARGUMENT

The Court should grant final approval of this substantial and record-breaking settlement. "The law favors the compromise and settlement of class action suits." *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015). In determining whether a class action settlement should be approved, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San*

---

[2] At the preliminary approval stage, it was estimated that there were 92,668 class members. After a reverse phone number search and further analysis, however, the Settlement Administrator determined there to be approximately 102,416 class members. *See* Cordova Decl. at ¶¶ 6-7.

*Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The district court's ultimate determination will necessarily involve a balancing of several factors which may include … the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* "Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation…." *Id.* Under these standards, final approval is clearly warranted here.

### A.     The strength of Plaintiffs' case.

Plaintiffs believe strongly in their claims but recovery of an amount greater or even equal to the settlement achieved here was far from certain. Defendants vigorously disputed the merits of Plaintiffs' claims. Among other things, Wells Fargo and Priority maintained that there was no principal-agent relationship with Wholesale and that their contracts disclaim any such relationship. *See* Defendants' contracts, attached as Group Ex. D. Even if there was a principal-agency relationship, Wells Fargo and Priority maintained that Wholesale acted outside the scope of its authority by illegally recording calls. Whether these complex issues would have been decided at summary judgment or at trial, they were far from certain for either side.

A ruling in favor of Wells Fargo and Priority on vicarious liability would have left Wholesale as the sole remaining defendant, a small telemarketing company that would be unlikely to fund the current settlement by itself, much less a full judgment. *See Charvat v. Valente*, No. 12-CV-05746, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 28, 2019) ("[A]bsent a settlement, each of the parties would face very real litigation risk at trial. [Plaintiff], for instance, may well have failed to prevail at trial, as his claims were predicated on the notion that the Cruise Defendants were vicariously liable for RMG's actions in sending the telemarketing calls. Should the Court or a jury have found that RMG was not acting as an agent for the Cruise Defendants, not a single member of the class would have received any payment.") (granting final

approval of class action settlement).

Defendants have also asserted that any aggregated damage award at $5,000 per call would be unconstitutional under the Due Process Clause. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (upholding district court's 98% reduction in statutory damage award in class action from $1.6 Billion, or $500 per call, to $32 Million, or $10 per call). Defendants have raised numerous other defenses as well, including that routine sales calls are not confidential under Cal. Penal Code § 632, the case is unsuitable for class certification, and the suit is subject to a one-year statute of limitations. Plaintiffs disagree that these defenses have merit, but they nonetheless add to the uncertainty of continuing the litigation. *See Medeiros v. HSBC Card Servs., Inc.*, No. CV1509093JVSAFMX, 2017 WL 11632870, at *4 (C.D. Cal. Oct. 23, 2017) (noting the "substantial risks involved in continuing [CIPA] litigation").

The settlement, on the other hand, provides a substantial and certain recovery for the class that may not otherwise be obtained. Indeed, the settlement here far exceeds all prior large CIPA settlements in terms of per class member recovery. *See* Zolna Decl. at ¶¶ 9-10. In short, the settlement provides substantial and meaningful relief for vigorously contested and uncertain claims. The first factor, therefore, supports final approval of the settlement.

**B.     The risk, expense, complexity, and likely duration of further litigation.**

Trying this suit to conclusion would have been a complex, lengthy, and expensive endeavor. Defendants vigorously contested vicarious liability and a trial on that issue alone would have been time-consuming and expensive. Significant additional discovery—including dozens of depositions and experts—would have been needed prior to any trial. In the recent *Wang* case, for example, the litigation spanned six years just to get to the class certification stage. Summary judgment, trial, and appeals would have added years to the litigation—and the same is true here. The settlement, on the other hand, provides greater relief on a per class member basis than *Wang* and on a much more expedited basis. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now,' and a major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled."

5

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (citations omitted); *see also Reed v. 1-800 Contacts, Inc.*, No. 12-CV-02359 JM BGS, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) ("[T]he proposed [CIPA] settlement eliminates the risks of litigation for class members and ensures that they will receive significant compensation without further delay.").

The second factor clearly favors final approval.

**C.    The risk of maintaining class action status throughout the trial.**

Plaintiffs believe this case can and would be certified as a class action as it involves a uniform practice of recording calls without disclosure. There are, however, a line of cases denying class certification of claims brought under Cal. Penal Code § 632. *See Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467 (2014) ("the determination whether an individual plaintiff had an objectively reasonable belief that his or her conversation … would not be recorded will require individualized proof"); *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112 (2014) (same); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587 (C.D. Cal. 2013) (same).

Plaintiffs believe these cases are distinguishable from this case, but they nonetheless create a level of uncertainty to class certification. Settling the case now eliminates this risk and provides further support for final approval. *See Medeiros*, 2017 WL 11632870, at *5 ("[T]here is a significant risk that the Class would not have been able to maintain class status were the litigation to proceed. The parties note that a number of recent cases have denied class certification or decertified classes in CIPA cases, indicating that the outcome here is uncertain. *** Accordingly, this factor weighs in favor of final approval."); *Mirkarimi v. Nevada Prop. 1, LLC*, No. 12CV2160 BTM (DHB), 2016 WL 795878, at *3 (S.D. Cal. Feb. 29, 2016) ("Plaintiff faces a plausible risk that the class would either fail at certification or fail later in the proceeding where individualized inquiries could predominate over common issues. *** Thus, this factor also favors settlement") (granting final approval of CIPA class settlement); *McDonald v. Bass Pro Outdoor World, LLC*, No. 13-CV-889-BAS DHB, 2014 WL 3867522, at *6 (S.D. Cal. Aug. 5, 2014) ("[T]here is no doubt that a motion for class certification [of CIPA claims] would be hotly contested."). Accordingly, the third factor weighs in favor of final approval.

**D.     The amount offered in settlement.**

The amount offered in settlement unequivocally supports final approval. Numerous CIPA class actions have settled for less than $1 per class member and others have ranged anywhere from a few dollars to $50-60 per class member. *See* Zolna Decl. at ¶ 10. The per class member recovery here ($190.40) exceeds the largest prior CIPA settlements and is far greater than the benchmark range of less than $1 to $60 per class member in which CIPA class actions typically settle. Class members who submitted a claim will receive on average $680.49 each. *See* Cordova Decl. at ¶ 16. This is a substantial payment for an intrusion of privacy that, on average, lasted 45 seconds and often less than 15 seconds. *See* Zolna Decl. at ¶ 8; *see also Officers for Just.*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 374 (N.D. Cal. 2021) (approving settlement of privacy class action suit where individual class member payments ranged from $10-$39 even though statutory damages were $5,000 per violation); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) ("A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimis* amount. *** [T]he court finds that the amount of the settlement weighs in favor of approval.").

The settlement also provides substantive prospective relief requiring Wholesale to disclose that calls are being recorded, thus preventing tens of thousands of future privacy violations. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (affirming district court's finding that prospective relief in a settlement of a CIPA suit—in the form of requiring a disclosure—"had value to absent class members").

This non-monetary relief in conjunction with "the large amount offered in settlement weighs heavily in favor of approval." *Reed*, 2014 WL 29011, at *6 (granting final approval of $11,700,000 settlement of CIPA class action on behalf of 81,796 class members, citing other CIPA settlements that ranged from $10-$30 per class member); *see also Medeiros*, 2017 WL

7
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT    CASE NO. 3:23-cv-06265-LJC

1  11632870, at *5-6 (granting final approval of CIPA class settlement providing a $7.54 recovery

2  per class member, noting "a number of other CIPA cases in which courts have approved

3  settlements … between $0.75 and $6.98 per class member").

### E. The extent of discovery completed and the stage of the proceedings.

Prior to reaching a settlement, the parties exchanged substantive information in connection with the Early Settlement Conference and apprised each other of their respective factual contentions, legal theories, and defenses. Class Counsel also conducted a considerable investigation prior to filing suit. *See* Zolna Decl. at ¶ 12. Furthermore, many of the relevant documents in this case—including the Visa and Mastercard rules that govern the relationship amongst the Defendants—are publicly available and were fully analyzed by Class Counsel prior to filing suit. *Id.* Other significant documents, including the contracts amongst Defendants, were produced in the litigation, as was data on the number of calls. *Id.* The contracts and the Visa and Mastercard rules are of significant relevance because they define the relationship and obligations amongst the Defendants, which bear on, among other things, the issue of agency. *Id.*

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (brackets, citation, and internal quotation marks omitted); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding that "the Parties have a clear view of the strengths and weaknesses of their cases" based on "significant informal discovery and investigation on the matters alleged, even though formal discovery was stayed"). Here, the parties exchanged substantive information and conducted a thorough investigation of the claims and defenses, all of which weigh in favor of final approval.

### F. The experience and views of counsel.

In connection with the sixth factor, Plaintiffs submit the Declaration of Jacie C. Zolna, a lawyer with over 23 years of experience in complex and class action litigation. Mr. Zolna was one of the lawyers appointed class counsel in the *Wang* case, which also involved CIPA violations in

the payment processing industry and resulted in the largest settlement by total dollar amount ever in a CIPA class action. *See* Zolna Decl. at ¶ 4. Based on his extensive experience, Mr. Zolna opines that the settlement is fair, reasonable, and adequate and provides a significant benefit to the class. *Id.* at ¶ 5. Mr. Zolna's opinion is based on his experience in CIPA class actions involving the payment processing industry, the amount of relief provided to the class, and a comparison of this settlement to other CIPA class action settlements. *Id.* at ¶¶ 5-10. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *McDonald*, 2014 WL 3867522, at *8 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998, at *10 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel."). Mr. Zolna's opinion, therefore, provides further support in favor of final approval.

G.    **The presence of a governmental participant.**

CAFA notice was sent to the appropriate governmental authorities and none voiced any opposition to the settlement. *See* Cordova Decl. at ¶¶ 2-4. The lack of any governmental opposition supports final approval of the settlement. *See In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("[N]otice of the proposed settlement was provided to appropriate state and federal officials. None of these officials have raised any objection or concern regarding the settlement. Thus, this factor favors the settlement.").

H.    **The reaction of the class members to the proposed settlement.**

The reaction of the class members to the settlement was overwhelmingly positive. Of the 102,416 class members, only one elected to opt-out of the settlement. This represents only .000098% of the class. Significantly, there was *not a single objection* to the settlement or the requested attorneys' fees, costs, and incentive awards. "The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). "That

9

1  unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed
2  Settlement is fair, just, reasonable, and adequate." *Id.*
3        In contrast to the non-existent opposition to the settlement, approximately 18,918 claims
4  were submitted seeking to participate in the settlement. *See* Cordova Decl. at ¶ 14. This robust
5  response is further evidence that the settlement was received favorably by class members,
6  particularly considering that the average claims rate "in cases involving 'privacy concerns[]' …
7  [is] 3.87%[.]" *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 374 (N.D. Cal. 2021); *see also Six (6)*
8  *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) ("Settlements
9  of large class action suits have been approved even where less than five percent of the class files
10 claims."); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("[Class] settlements
11 regularly yield response rates of 10 percent or less."); Zolna Declaration at ¶ 9, fn. 1 (noting
12 claims rates of 3.81%-13.8% in other large CIPA class settlements).
13       The high claims rate coupled with the single opt-out and no objections demonstrates that
14 the notice program was successful and the class believes the settlement is fair, reasonable, and
15 adequate. Indeed, large class actions will inevitably draw objections and opt-outs and, for that
16 reason, courts routinely recognize a positive class member reaction despite opposition similar to
17 or greater than the one opt-out and no objections here. *See Churchill Vill., L.L.C. v. Gen. Elec.*,
18 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of class action settlement where of the
19 90,000 class members there were 45 objectors and 500 opt-outs); *Moore v. Verizon Commc'ns*
20 *Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving class
21 action settlement where 3% of class members submitted claims and there were 28 objections and
22 621 opt-outs); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1205-08 (C.D. Cal. 2014)
23 (approving TCPA class action settlement even though claims were submitted by only 271 of the
24 57,000 class members).
25       The lack of opposition and favorable reaction of class members to the settlement weigh in
26 favor of granting final approval.

**I.      The Rule 23 factors also favor final approval.**

The Rule 23 factors—most of which overlap with those addressed above—also favor final approval of this class action settlement. Rule 23 provides that in approving a class action settlement, the court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

Here, Plaintiffs and Class Counsel adequately represented the class and secured one of the largest settlements ever under CIPA. Class Counsel are also well-respected members of the legal community with decades of experience in class actions, including claims under CIPA. *See* Zolna Decl. at ¶¶ 2-4. The settlement was the product of informed and arms-length negotiations overseen by Magistrate Judge Ryu. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) ("[T]he settlement was reached after the parties participated in private mediation, which 'tends to support the conclusion that the settlement process was not collusive.'") (citation omitted). The substantial amount of the settlement itself dispels any notion of collusion.

As shown above, the relief provided to the class is more than adequate and accounts for the risks of continued litigation. The settlement also provides for a robust and effective claims process and includes multiple features to ensure class members receive and cash their settlement payments. *See supra* at 2; *see also Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *7 (N.D. Cal. Oct. 15, 2018) ("The parties also ensured that mechanisms were in place to encourage the filing of claims, including a settlement website and toll free numbers."). The amount of the requested attorneys' fees is also fair and reasonable given the excellent results achieved by Class Counsel. *See* Petition for Attorneys'

Fees, Costs, and Incentive Awards (Doc. 89), incorporated by reference as if fully set forth herein. Notably, not a single class member objected to the amount of attorneys' fees requested by Class Counsel. With respect to factor (C)(iv), there are no agreements required to be identified under Rule 23(e)(3). *See* Zolna Decl. at ¶ 14. Lastly, all class members are treated equally and entitled to the same settlement payment based on the number of calls they received.

Accordingly, the Rule 23 factors weigh in favor of final approval as well.

**WHEREFORE,** Plaintiffs respectfully request the Court to grant final approval of this class action settlement and enter a final judgment.

Dated: May 13, 2025

/s/ *Jacie C. Zolna*
MYRON M. CHERRY & ASSOCIATES, LLC
Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
30 N. LaSalle St., Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100

ANDRUS ANDERSON LLP
Jennie Lee Anderson
jennie@andrusanderson.com
155 Montgomery Street, Suite 900
San Francisco, California 94104
Telephone: (415) 986-1400

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 30 N. LaSalle St., Suite 2300, Chicago, Illinois 60602.

On May 13, 2025, I served a true copy of the following document described as **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** on all parties to this action, listed below, **BY CM/ECF NOTICE OF ELECTRONIC FILING**. I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules:

DELAHUNTY & EDELMAN LLP
Will Edelman
wedelman@delawllp.com
Micah Nash
mnash@delawllp.com
4 Embarcadero Center, Suite 1400
San Francisco, California 94111
*Attorneys for The Credit Wholesale Company, Inc.*

POLSINELLI LLP
John W. Peterson
john.peterson@polsinelli.com
Matthew S. Knoop
mknoop@polsinelli.com
501 Commerce Street, Suite 1300
Nashville, Tennessee 37203
*Attorneys for Wells Fargo Bank, N.A.*

KING & SPALDING LLP
Samuel R. Diamant
sdiamant@kslaw.com
601 S. California Avenue, Suite 100
Palo Alto, California 94304

KING & SPALDING LLP
Phyllis B. Sumner
psumner@kslaw.com
Billie B. Pritchard
bpritchard@kslaw.com
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309

*Attorneys for Priority Technology Holdings, Inc. and Priority Payment Systems, LLC*

Executed on May 13, 2025, in Chicago, Illinois.

/s/ *Jacie C. Zolna*
Jacie C. Zolna