1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    AGUILAR AUTO REPAIR, INC. and            Case No. 23-cv-06265-LJC
     CENTRAL COAST TOBACCO CO., LLC,
8    individually and on behalf of all others
     similarly situated,
                                              ORDER GRANTING PLAINTIFFS'
9              Plaintiffs,                     MOTION FOR FINAL APPROVAL OF
                                              CLASS ACTION SETTLEMENT;
10        v.                                   GRANTING PLAINTIFFS' PETITION
                                              FOR ATTORNEYS' FEES, COSTS,
11                                            AND INCENTIVE AWARDS
     WELLS FARGO BANK, N.A., PRIORITY
12   TECHNOLOGY HOLDINGS, INC.,               Re: Dkt. Nos. 89, 92
     PRIORITY PAYMENT SYSTEMS, LLC
13   and THE CREDIT WHOLESALE
     COMPANY, INC.,
14
               Defendants.
15

16        Before the Court are Plaintiffs Aguilar Auto Repair, LLC and Central Coast Tobacco

17   Company, LLC's Motion for Final Approval of Class Action Settlement (ECF No. 92) and

18   Petition for Attorneys' Fees, Costs, and Incentive Awards (ECF No. 89).  The Court held a

19   hearing on May 20, 2025, and, after considering the papers submitted by the parties and the oral

20   arguments presented, GRANTED the Motion for Final Approval of Class Action Settlement and

21   Petition for Attorneys' Fees, Costs, and Incentive Awards from the bench.  The Court's reasoning

22   is as follows.

23   I.   BACKGROUND

24        Plaintiffs, on behalf of all others similarly situated, brought this action against Defendants

25   Wells Fargo, Priority Technology Holdings and Priority Payment Systems (together, Priority), and

26   the Credit Wholesale Company (Wholesale), for allegedly recording telemarketing cold calls

27   without consent of the recipients in violation of the California Invasion of Privacy Act (CIPA).

28

*United States District Court*
*Northern District of California*

ECF No. 29 (First Am. Compl.) (FAC) ¶¶1-6.  Plaintiffs allege that Wells Fargo contracted with Priority and Wholesale, two Independent Sales Organizations/Member Service Providers (ISO/MSPs), to call small businesses and try to recruit them to use Wells Fargo's payment processing services.  *See id.* ¶¶ 30-35.  Priority managed the work of Wholesale, whereas Wholesale operated call centers whose telemarketers cold-called small businesses to develop leads for Wells Fargo.  *See id.* ¶¶ 36, 39.  Plaintiffs allege that Wholesale secretly recorded these calls, that Priority and Wells Fargo approved of this practice, and that Wholesale acted as an agent of Priority and Wells Fargo.  *See id.* ¶¶ 51, 55.

CIPA prohibits the recording of confidential telephonic communications.  *See* Cal. Penal Code § 632.  Individuals who have been recorded without consent under CIPA may bring a private cause of action against the offender and recover up to $5,000 per violation.  Cal. Penal Code § 637.2(a).

Plaintiffs filed suit in San Francisco Superior Court in October 2023, alleging that Wholesale's practice of recording cold calls to small businesses violated CIPA and that Wells Fargo and Priority were liable as principals of Wholesale.  ECF No. 1-2 at 2.  Defendants proceeded to remove the action to the Northern District, asserting there was jurisdiction pursuant the Class Action Fairness Act of 2005 (CAFA) because the proposed class consisted of at least 100 members, the amount in controversy exceeded $5,000,000, and at least one member of the proposed class was a citizen of a state different from any defendant.  ECF No. 1 at 2; *see* 28 U.S.C. § 1332(d).  After the case was removed, Defendants moved to dismiss, Plaintiffs amended their complaint, and Defendants renewed their motion to dismiss.  *See* ECF Nos. 22, 29, 58, 62. The matter was then referred to Magistrate Judge Ryu for early settlement.  Following a conference with Judge Ryu, the parties were able to reach a settlement agreement.

Pursuant to the parties' proposed settlement agreement, Defendants will pay $19,500,000 (Settlement Fund) to create a non-reversionary common fund for the class members and an additional $200,000 for settlement administration costs.  ECF No. 89 at 7.  Class members who submit claims are eligible for a cash payment for each call they received from Defendants; class members who received multiple calls are eligible for multiple payments.  *See id.*  Per-class

United States District Court
Northern District of California

1  member payment is calculated by subtracting the attorneys' fees award, costs, and incentive

2  awards from the Settlement Fund, and dividing the difference by the number of claims submitted.

3  The agreement also provides prospective relief by requiring Wholesale to disclose when it is

4  recording calls.  The settlement agreement provides that Plaintiffs' counsel may petition for

5  attorneys' fees and costs, up to one-third of the settlement fund, and Defendants would not object.

6       Following a hearing on December 19, 2024, the Court granted Plaintiffs' motion for

7  preliminary approval of the class action settlement.  ECF No. 88.  The Court certified the proposed

8  class for settlement purposes only, and, with slight modifications, approved Plaintiffs' plan to

9  provide notice to the class about the proposed settlement and the process for class members to

10  submit claims.  *Id.*  Plaintiffs, via their settlement administrator, proceeded to notify the class

11  about the proposed settlement.  The administrator identified approximately 102,416 class members

12  who received roughly 149,010 eligible calls.  18,918 claims were submitted.  ECF No. 92 at 6.

13  One class member opted out of the settlement.  None objected.  *Id.*  Accounting for attorneys'

14  fees, costs, and incentive awards, each class member who submitted a claim will receive

15  approximately $680.  *Id.*

16       Plaintiffs now request that the Court grant final approval of the settlement agreement,

17  award their counsel one-third of the Settlement Fund, and approve the requested incentive awards

18  and reimbursement of costs.

19  **II.     MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

20       **A.     Legal Standard**

21       Class action settlements must be approved the court.  Fed. R. Civ. P. 23(e).  Before

22  approving a class action settlement, a court must 1) determine that the class satisfies the

23  certification requirements of Rule 23(a) and (b), 2) determine that adequate notice has been

24  provided to the class, and 3) "ensure that any class settlement is 'fair, reasonable, and adequate,'

25  accounting for the interests of absent class members." *Briseño v. Henderson*, 998 F.3d 1014, 1022

26  (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)); *Hanlon v. Chrysler*, 150 F.3d 1011, 1019, 1025

27  (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338

28  (2011).

B.     **Class Certification**

As a threshold matter, before granting final approval of the settlement, the Court must ascertain if the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Hanlon*, 150 F.3d at 1019.  On January 24, 2025, the Court preliminarily approved the Settlement Agreement, and certified, for settlement purposes, the Settlement Class consisting of:

> All businesses or individuals who received a telephone call from The Credit Wholesale Company, Inc. on a telephone in California between October 22, 2014 and November 17, 2023.

ECF No. 88.  Because no facts that would affect the Rule 23(a) and (b) requirements have changed since preliminary approval, this order incorporates by reference the Court's prior determination as set forth in the order at ECF No. 88.

C.     **Adequacy of Notice**

Under Federal Rule 23(e)(1)(B), courts "must direct notice" of a proposed class action settlement "in a reasonable manner to all class members who would be bound by the proposal[.]" "[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice to the class must be in "plain, easily understood language" and inform the class members about the nature of the lawsuit, the class definition, the binding effect of settlement on the class members, and members' right to opt out of the settlement.  *Id.*  "Although Rule 23 requires reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice."  *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131, 2025 WL 822665, at *4 (N.D. Cal. Mar. 14, 2025).

The Court finds that the notice plan approved at ECF No. 88 and implemented by Plaintiffs' settlement administrator complies with the requirement of Rule 23(c) and (e).  The notices were in plain and accessible language, described the nature of the lawsuit and claims process, advised the class of their right to object and the effect of being bound by the settlement, informed class members of their estimated recovery, listed the date of the final approval hearing, and provided the class with contact information for Plaintiffs' counsel as well as a website to

1 │ contact for additional information. *See* ECF No. 92-2 at 25-26. The administrator informed the
2 │ class of the settlement by mailing postcard notices to class members' last known addresses, widely
3 │ distributing notice of the settlement via banner ads on social media sites, and maintaining a
4 │ website and toll-free phone number that class members could access to obtain additional
5 │ information. ECF No. 92-3 ¶¶ 8-13. The settlement website had, as of May 12, 2025, 1,653,912
6 │ active visits and the telephone hotline received 650 calls. *Id.* ¶¶ 12-13. The claims rate, which is
7 │ relatively high for privacy class actions, reflects that the class was adequately notified of the
8 │ proposed settlement. *See id.* ¶ 14. The Court is accordingly satisfied that the method and form of
9 │ notice to the class was the best notice practicable under the circumstances and satisfied the
10 │ requirements of Rule 23(c)(2)(B) and Rule 23(e)(1).

### D. Fairness, Reasonableness, and Adequacy of Settlement Agreement

#### 1. Legal Standard

Federal Rule of Civil Procedure 23(e) "imposes on district courts an independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members." *Briseño*, 998 F.3d at 1022 (quoting Fed. R. Civ. P. 23(e)(2)). Federal Rule 23(e)(2), as amended in 2018, directs courts to consider if:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

As discussed at the hearing, in considering whether a settlement is "fair, reasonable, and adequate" as required by Rule 23(e), courts in the Ninth Circuit traditionally consider the so-called *Hanlon* factors (also referred to as *Churchill* factors): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action

United States District Court
Northern District of California

United States District Court
Northern District of California

status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. "The key *Hanlon* factors are now baked into the text of Rule 23(e)," although "the remaining ones can still be considered for Rule 23(e)(2) analysis." *In re California Pizza Kitchen Data Breach Litigation*, 129 F.4th 667, 674 (9th Cir. 2025). The Court's analysis accordingly focuses on the amended 23(e) factors and addresses pertinent *Hanlon* factors. *See Kang v. Wells Fargo Bank, N.A.,* No. 17-cv-06220, 2021 WL 5826230, at *14 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang v. Fyson,* No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) ("Because Rule 23 has been amended to list the factors most central to approval of a class action settlement, the Court began its analysis with the Rule 23(e) factors….the Court considers the remaining *Churchill* factors, as relevant.").

Settlements negotiated before formal class certification are subject to "an even higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Indicia of collusion include if plaintiffs' counsel receive "a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; if "the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947 (citations omitted).

### 2.    23(e) Factors

#### a.    Plaintiffs' Counsel and the Class Representatives Adequately Represented the Class

The Court is satisfied that Plaintiffs' counsel and the named Plaintiffs adequately represented the class. Counsel are experienced class-action litigators. *See* ECF No. 92-1 (Zolna Decl.) ¶¶ 3-4. Myron M. Cherry & Associates, LLC (the firm), where Mr. Zolna is partner, was

1    class counsel in a prior CIPA case, *C.S. Wang v. Wells Fargo Bank*, *N.A.,* 16-cv-11223 (N.S. Ill.).

2    *Id.* ¶ 3.  In that action, the firm investigated and developed a novel theory of liability holding

3    Wells Fargo responsible for the actions of its ISOs.  After litigating that action for six years, the

4    firm obtained a settlement of $78,000,000 for the class, which, Plaintiffs' counsel attests, is the

5    largest-ever CIPA class-action settlement.  Zolna Decl. ¶ 4; ECF No. 92 at 8.  Plaintiffs' counsel

6    was able to leverage their success and experience litigating *Wang* to obtain an early and

7    exceptionally strong settlement in this matter.  *See* Zolna Decl ¶¶ 3-4.  The overall Settlement

8    Fund, while smaller than the one obtained in *Wang*, compares favorably to other large-scale CIPA

9    class actions of its kind.  *See, e.g., Marenco v. Visa, Inc.*, 10-cv-08022, ECF No. 54 (C.D. Cal.

10   Nov. 30, 2011) (granting final approval of $18,000,000 settlement); *Mirkarimi v. Nevada Prop. 1,*

11   *LLC,* No. 12cv2160, 2016 WL 795878, at *3 (S.D. Cal. Feb. 29, 2016) (granting final approval of

12   $14,500,000 settlement).  Counsel attests that $19,500,000 settlement in this case is the second-

13   largest settlement in a CIPA action, after *Wang.  See id.* ¶ 5.  The Court's own research did not

14   identify any comparable CIPA class settlements pre-dating the settlement in this action that

15   contradicted Counsel's representation.  The Court examined CIPA class settlements that involved

16   alleged recorded telephone calls, and did not consider class settlements that concerned the

17   collection of personal data by unwitting internet users.  In addition to the significant overall

18   amount, the per-class member recovery, assuming a 100 percent claims rate and not accounting for

19   attorneys' fees or costs, at $190.40, is greater than many other large-scale CIPA actions.  *See*

20   *Wang*, 16-cv-11223 (approximately $156 per class member); *Mirkarimi*, 2016 WL 795878, at *3

21   ($144.22 per class member); *Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359, 2014 WL 29011

22   (S.D. Cal. Jan 2, 2014) ($117.14 per class member).  CIPA actions often settle for far less on a

23   per-class member basis.  *See* Zolna Decl. ¶ 10 (listing CIPA settlements that resulted in payments

24   between $0.75 to $63.27 per class member).  As not all class members submitted claims, the

25   actual per-class member recovery will be approximately $680, accounting for attorneys' fees,

26   costs, and incentive awards.  ECF No. 92 at 10.  As Plaintiffs note, this "is a substantial payment

27   for an intrusion of privacy that, on average, lasted 45 seconds[.]"  *Id.*

28        The per-class member recovery is far less than the statutory award of $5,000 per illegally

recorded phone call provided under CIPA.  Cal. Penal Code § 637.2(a)(1).  But it "is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).  Given the risk and delay of litigation, the disparity between what the class members will receive immediately pursuant to the settlement and what they may have eventually received had they prevailed in this action in no way indicates that they have not been adequately represented.  *See Cottle v. Plaid Inc.*, 340 F.R.D. 356, 374 (N.D. Cal. 2021) (finding a settlement agreement that would result in payouts of $10 to $39 to individual class members where statutory damages were set at $5,000 per violation was "a fair and adequate compromise").  This is particularly true as Defendants have argued that an aggregated damage award at $5,000 per call would violate due process.  *See* ECF No. 92 at 8.

Notably, while 18,918 claims have been submitted, only one class member opted out and none objected.  *Id.* at 12.  "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (quotations omitted).  The fact that no class members have objected to the settlement is a strong indicator that counsel and the named Plaintiffs adequately represented the class.

### b.  The Settlement Was the Product of Arm's Length Negotiations

Plaintiffs' counsel attest that their settlement "was the product of extensive arm's length negotiations, including an Early Settlement Conference before the Magistrate Judge Donna M. Ryu."  Zolna Decl. ¶ 11.  While the assertion that the parties engaged in "arm's length negotiations" is somewhat conclusory, the fact that they negotiated the settlement with the assistance of a neutral magistrate weighs "in favor of a finding of non-collusiveness" and of the settlement being "fair, adequate, and reasonable."  *In re Bluetooth*, 654 F.3d at 948.  The posture of the case also does not indicate that the negotiations were collusive.  The parties negotiated after multiple rounds of motions to dismiss and amendments to the complaint, and, although the parties did not exchange discovery, Plaintiffs obtained "voluminous information on call volume" from

1    Defendants and third parties prior to negotiating to determine the value of their claims.  Zolna

2    Decl. ¶ 12. Plaintiffs' counsel attests that they conducted extensive research into the relationship

3    between Wells Fargo and its ISOs prior to filing suit.  *Id.*  These factors indicate that the

4    settlement agreement was reached after informed, arm's length negotiations between the parties

5    rather than a product of collusion between Plaintiffs' counsel and Defendants.

6                    **c.        The Class Members Obtained Adequate Relief**

7           Rule 23(e)(2)(B) instructs courts to consider if a class settlement provides for adequate

8    relief for the class, considering "the costs, risks, and delay of trial and appeal[,]…the effectiveness

9    of any proposed method of distributing relief to the class," the attorneys' fee award, and whether

10   the settlement includes any agreement "required to be identified under Rule 23(e)(3)."  The

11   attorneys' fees award is discussed below, and there are no "agreements required to be identified

12   under Fed. R. Civ. P. 23(e)(3) in connection" with the settlement.  Zolna Decl. ¶ 14.  The Court

13   finds that the relief for the class members is adequate given the risks and delay of continuing

14   litigation, and finds that the method of notifying the class about the settlement and distributing

15   payment is adequate.  As discussed above, the settlement provides meaningful monetary

16   compensation to class members who submitted claims.  It also provides "substantive prospective

17   relief requiring Wholesale to disclose that calls are being recorded," which prevents future

18   violations of privacy and protects the interests of all class members and prospective consumers.

19   ECF No. 92 at 10; *see Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020).

20          Proceeding to class certification and trial would have exposed the class to significant costs,

21   risk, and delay.  Plaintiffs' counsel notes that, in their recent *Wang* case, it took six years to reach

22   class certification; the Court recognizes that engaging in discovery and proceeding to class

23   certification and on to trial would be a comparably lengthy and expensive process.  ECF No. 92 at

24   9.  The class members here "will receive significant compensation without further delay" rather

25   than wait years for a potential payout. *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *6.

26   Moreover, while Plaintiffs argue that their case is strong, they would be advancing an untested

27   theory that Wells Fargo and Priority had a principal-agent relationship and that Wholesale was

28   acting within the scope of that relationship when it recorded its telemarketing calls.  *See* ECF No.

United States District Court
Northern District of California

9

92 at 7. These issues "were far from certain for either side." *Id.*; *see* ECF No. 92-4 (contracts between Defendants purporting to avow any principal-agency relationship). There is the additional risk that Plaintiffs would not be able to obtain or maintain class certification, as there are numerous CIPA cases that have denied class certification or decertified classes based on the need for individualized determinations of whether any particular class member believed their conversation would be recorded. *Id.* at 9; *see Torres v. Nutrisystem, Inc.,* 289 F.R.D. 587, 591-95 (C.D. Cal. 2013); *Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1467 (2014). By settling the case relatively early with significant monetary relief to the class, Plaintiffs avoid the costs, risks, and delay of proceeding towards trial.

The administration of the settlement fund appears to distribute relief effectively to the class. The settlement administrator identified 102,416 class members, obtained addresses for 99,116 of them. ECF No. 92-3 ¶¶ 7, 9-10. The administrator mailed notices to the class members with known addresses and made diligent efforts to obtain updated addresses and published the notice on public websites via banner ads to reach class members who did not receive the notices by mail. *Id.* ¶¶ 8, 11. The notices informed the class that they were eligible for payments of between $86 to $5,000 per call, how to submit a claim, object to the settlement agreement, or opt out. *See* ECF No. 92-3 at 15. Class members were able to submit claims either by returning a pre-paid postcard or submitting a claim online via the settlement website. *See* ECF No. 92-2 at 27.

As of May 20, 2025, 18,918 claims forms had been submitted. This includes late-filed claims forms and claims submitted without a postmarked date, which the parties agreed to accept. ECF No. 92-3 ¶ 14. Plaintiffs do not specify if the 18,918 claims were submitted by 18,918 unique class members or if some class members submitted multiple claims; in any case, given that the class includes 102,416 members who received approximately 149,010 calls, the claims rate is a fairly high for a privacy action. *See Wang*, 16-cv-1123 (11.25 percent claims rate); *McCabe v. Six Continents Hotels, Inc.,* No. 12-cv-04818, 2016 WL 491332, at *2 (N.D. Cal. Feb. 8, 2016) (5.2 percent claims rate). The relatively high claims rate, the low barriers for class members to submit claims, and the administrator's efforts to inform the class about the lawsuit and claims process all indicate that the settlement fund will be effectively distributed to the class.

United States District Court
Northern District of California

### d.    The Settlement Treats Class Members Equitably

Rule 23(e) lastly instructs courts to assess whether the settlement agreement treats class members equitably.  As discussed above, the settlement administrator conducted thorough outreach to inform the class about the case and the process for submitting claims.  Each class member is eligible for a cash payment per call they received from Wholesale.  Such relief, which compensates class members commensurate with the frequency that Defendants allegedly violated their privacy, is equitable.  Moreover, all class members are afforded prospective relief, as the settlement requires Wholesale to disclose when it is recording calls.  ECF No. 92 at 10.  The two named class members, Aguilar Auto Repair and Central Coast Tobacco, will receive incentive awards of $7,500.  The Court finds that this is appropriate compensation for the time they spent actively involved in this case and does not detract from the settlement's overall fairness.

### 3.    *Hanlon* Factors

As noted above, the Ninth Circuit has instructed courts to consider the following eight *Hanlon* factors in assessing the overall fairness and adequacy of a class action settlement: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  "Consideration of [the *Hanlon*] factors is not precluded by the 2018 amendment to Rule 23," although the amended Rule 23(e) factors overlap considerably with the *Hanlon* factors.  *Kang*, WL 5826230, at *14.

Plaintiffs faced real risks that they would not prevail on their principal-agent theory of liability, would be unable to certify their class or maintain certification, and, even if successful, would not be able to obtain an aggregated damages award of $5,000 per call.  Continued litigation would be protracted and expensive.  Plaintiffs have obtained one of the largest overall settlements in a CIPA action, and the per-class member payments compare favorably to other CIPA actions.  No class members objected to the settlement agreement and only one opted out, indicating that the class overwhelmingly approved of the settlement.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F.

United States District Court
Northern District of California

1  Supp. 2d 848, 852 (N.D. Cal. 2010) (explaining, where no class members objected to a proposed

2  settlement and 4.85 percent of the class opted out, that "the overwhelming[ly] positive reaction of

3  the class members supports settlement"). Thus, balancing the strength of Plaintiffs' case with the

4  risk, expense, complexity and likely duration of this case, and considering the reaction of class

5  members, these *Hanlon* factors thus favor approval of the settlement agreement.

6        Turning to the fifth factor, while the parties did not engage in formal discovery, they

7  exchanged substantive information in connection with the settlement conference in front of Judge

8  Ryu and apprised each other of their respective factual contentions, legal theories, and defenses.

9  ECF No. 92 at 11. Plaintiffs' counsel conducted extensive research into the relationships between

10  Defendants to support their theory of liability before filing suit. "In the context of class action

11  settlements, formal discovery is not a necessary ticket to the bargaining table where the parties

12  have sufficient information to make an informed decision about settlement." *In re Mego Fin.*

13  *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (quotations

14  omitted). The Court is satisfied that the parties obtained sufficient information to reach an

15  informed settlement.

16        The sixth factor—the experience of counsel—weighs in favor of approving the settlement

17  as well. As discussed above, Plaintiffs' counsel are experienced class action litigators and have

18  successfully litigated prior CIPA actions. Counsel Jacie Zolna attests that the settlement provides

19  substantial and meaningful relief to the class. ECF No. 92-1. The Court credits counsel's

20  endorsement of the proposed settlement in its decision to grant final approval.

21        Lastly, turning briefly to the seventh factor, notice of the settlement agreement was sent to

22  the appropriate governmental authorities, as required by the Class Action Fairness Act. ECF No.

23  92-3 ¶ 3; *see* 28 U.S.C. § 1715(b). None voiced any opposition with the settlement. The lack of

24  any governmental opposition supports final approval of the settlement.

25        **4.**    ***Bluetooth* Factors**

26        As the settlement was negotiated prior to formal class approval, the Court must assess if

27  there are "subtle signs that class counsel have allowed pursuit of their own self-interests and that

28  of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Such

1    warning signs include, but are not limited to, a "gross disparity" between class recovery and the

2    attorneys' fee award, whether a settlement agreement includes a "clear sailing" provision, and

3    whether any unclaimed settlement funds will revert back to the defendants. *Id.*; *Briseño*, 998 F.3d

4    at 1026.

5         Here, class members will receive monetary payments that, relative to other CIPA class

6    action settlements, are substantial. While Plaintiffs' counsel will be "amply rewarded," the

7    attorneys' fees award is not disproportionate to the payout to the class. *In re Bluetooth*, 654 F.3d

8    at 947. As discussed below, the Court grants Plaintiffs' counsel their requested $6,500,000 in

9    attorneys' fees. Accounting for incentive awards and costs,[1] the payout to the class will be

10    approximately $12,874,100, nearly twice the attorneys' fee award. The Court finds that the

11    attorneys' fees award, while high, is not disproportionate to the class payout. *Compare*

12    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258-59 (N.D. Cal. 2015) (finding that,

13    where the class payout was approximate 2.6 times the attorneys' fees award, the attorneys' fees

14    were reasonable and not disproportionate), *with Harris v. Vector Marketing Corp.*, No. C-08-5198

15    EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011) (finding that an attorneys' fees award

16    that was "roughly four times greater than the actual and expected payout to the class" was

17    disproportionate), *and Briseño,* 998 F.3d at 1026 (finding that plaintiffs' counsel received "a

18    disproportionate distribution of the settlement" where counsel was set to receive approximately

19    seven times the class's recovery).

20         Turning to the other *Bluetooth* factors, the settlement agreement includes a "clear sailing"

21    provision that establishes that Defendants will not oppose Plaintiffs counsel's request for an

22    attorneys' fees award of up to one-third of the Settlement Fund. ECF No. 92-2 at 8, § 18. "The

23    very existence of a clear sailing provision increases the likelihood that class counsel will have

24    bargained away something of value to the class." *In re Bluetooth*, 654 F.3d at 948 (citing

25    *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). The presence of a

26    clear sailing provision does not doom a settlement agreement, but rather imposes a "heightened

27    _____

28    [1] This includes the estimated $78,129 in settlement administrative costs exceeding the $200,000 to
cover administrative costs provided for in the settlement. *See* ECF No. 92-3 ¶ 19.

United States District Court
Northern District of California

duty" on the court "to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *In re Bluetooth*, 654 F.3d at 948 (quotations omitted). Here, given that no class members objected to the proposed attorneys' fees award (which was disclosed in the class notice); that the attorneys' fee is less than the class payout; that, even after accounting for the attorneys' fee, class members will receive substantial monetary awards; that the settlement was negotiated at arm's length with the assistance of a neutral magistrate judge; and that none of the settlement fund reverts back to defendants, the Court finds that the clear sailing provision does not indicate improper collusion between Plaintiffs' counsel and Defendants and does not negate the overall reasonableness and fairness of the settlement agreement. *See Bellinghausen*, 306 F.R.D. at 259.

Lastly, the settlement agreement does not include a reversionary clause. If any funds remain in the Settlement Fund twenty-three months after the final settlement date, these funds will be distributed to the Electronic Frontier Foundation as a *cy pres* award and under no circumstances will be returned to Defendants. *See* ECF No. 92-2 at 13, § 30; *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019) (disfavoring reversionary clauses as they "create perverse incentives").

The Court accordingly is satisfied that settlement agreement is not the product of improper collusion and that, taken as a whole, the settlement is fair, reasonable, adequate. *See In re Bluetooth*, 654 F.3d at 947.

## III.    MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Plaintiffs' counsel request $6,500,000 in attorneys' fees, $33,437.25 in costs, and $7,500 in incentive awards to the two named Plaintiffs. For the following reasons, the Court approves this request.

### A.    Attorneys' Fees

#### 1.    Legal Standard

"A court may award reasonable attorneys' fees and costs in certified class actions where they are authorized by law or by the parties' agreement." *Medeiros v. HSBC Card Servs., Inc.*,

No. CV 15-09093, 2017 WL 11632870, at *9 (C.D. Cal. Oct. 23, 2017) (citing Fed. R. Civ. P. 23(h)).  District courts approving class action settlement agreements have an "independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth.*, 654 F.3d at 941.  Where the district court has diversity jurisdiction over a case, as it does here, it applies "state law in determining not only the right to fees, but also in the method of calculating the fees." *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  Accordingly, it is appropriate to apply California state law in calculating Plaintiffs' attorneys' fees award.  Under California law, in class action litigation there are two "primary methods of determining a reasonable attorney fee": the percentage method and the lodestar method.  *Laffitte v. Robert Half Internat. Inc.,* 1 Cal. 5th 480, 489 (2016).  "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery[,]" whereas "[t]he lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Id.* (quotations omitted).  Courts may employ the percentage method in awarding attorneys' fees for common fund cases, although whether to employ the percentage method or lodestar-multiplier method is within the court's discretion.  *Id.* at 504.  The "recognized advantages" of the percentage method include the "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation[.]" *Id.* at 503.  When courts employ the percentage method, they may conduct a "lodestar cross-check," which "provides a mechanism for bringing an objective measure of the work performed into the calculation of a reasonable attorney fee." *Id.* at 504.  Following *Laffitte*, the Court employs the percentage method and conducts a lodestar cross-check to evaluate the reasonableness of the award.  *See Bellinghausen*, 306 F.R.D. at 260.

### 2.    Percentage of the Fund

Plaintiffs request that they be awarded one-third of the Settlement Fund, or $6,500,000.  The Ninth Circuit uses twenty-five percent of a settlement fund as the benchmark for awarding attorneys' fees.  *See In re Bluetooth*, 654 F.3d at 942; *see Laffitte*, 1 Cal. 5th at 495.  "An

adjustment, either up or down, must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." *Reyes v. Experian Info. Solutions, Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021) (quotations omitted). In choosing whether to deviate from the benchmark, courts consider:

> (1) the results obtained by counsel; (2) the risks and complexity of issues in the case; (3) whether the attorneys' fees were entirely contingent upon success and whether counsel risked time and effort and advanced costs with no guarantee of compensation; (4) whether awards in similar cases justify the requested fee; and (5) whether the class was notified of the requested fees and had an opportunity to inform the Court of any concerns they have with the request.

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.,* No. 14-md-2541, 2017 WL 6040065, at *2 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).[2]

First, Plaintiffs' counsel here achieved strong results for the class members, considering the size of the entire Settlement Fund and per-class member payments. They secured one of the highest settlements in a CIPA action of its kind. The per-class member recovery of approximately $190 per recorded call is high for a CIPA class action settlement. *See Medeiros*, 25-cv-09093 (N.D. Cal.), ECF No. 103 at 4 (average gross per-member recovery was approximately $8); *McCabe*, N.D. Cal. 12-cv-04818 ($17 per class member); *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *6 ($117.14 per class member in CIPA class action). Accounting for attorneys' fees and costs, each class member who submitted a claim will receive approximately $680. *See* ECF No. 92 at 10. The settlement agreement obtains prospective relief by requiring Wells Fargo's ISOs to disclose that it is recording calls. While it is not necessary to assign a monetary value to such prospective relief, the Ninth Circuit has recognized that prospective relief has "value to absent class members." *Campbell*, 951 F.3d at 1123. Second, there was considerable risk involved in the litigation. Plaintiffs' theory that Wells Fargo could be held accountable for the actions of its ISOs

---

[2] Plaintiffs request that the Court ignore the Ninth Circuit's benchmark, as the Court must apply state law in determining the method of calculating fees. The Court, following *Laffitte*, employs the percentage method to calculate attorneys' fees, but is also obligated to assess the reasonableness of the award. *In re Bluetooth.*, 654 F.3d at 941. The Ninth Circuit's benchmark and factors warranting adjustments provide an invaluable framework for assessing the reasonableness of the award. *See DiMurcurio*, 2024 WL 2113857, at *9 (adjusting upwards from the Ninth Circuit's twenty-five percent benchmark in a diversity action).

United States District Court
Northern District of California

is "novel and untested," and it was unclear if Plaintiffs would have been able to certify their class or show that Plaintiffs had been recorded without their consent. ECF No. 89 at 11; *see Medeiros*, 2017 WL 11632870, at *10 (identifying the risk of denial of class certification in CIPA actions). Third, Plaintiffs' counsel took this case "entirely on a contingent basis." ECF No. 89 at 11. Counsel has expended nearly one million of their own dollars litigating this action with no guarantee that they would earn anything. This factor weighs strongly in favor of granting the requested attorneys' fees award. Fourth, the awards in comparable "call recording class actions" shows that awarding a third of the settlement fund is appropriate, given the strong results. *Medeiros*, 2017 WL 11632870, at *11 (awarding one-third of the settlement fund given "the results achieved"); *see In re Vizio, Inc. Consumer Privacy Litig*, 26-ml-02683, 2019 WL 12966638, at *6 (C.D. Cal. July 31, 2019) (awarding one-third of the settlement fund). Fifth, the class members were informed that the attorneys would be seeking up to one-third of the entire settlement fund, whereas each class member might receive as little as $86. *See* ECF No. 92-2 at 25. No class members objected, which is a strong indication to the Court that the class viewed the attorneys' fee award as fair and reasonable when compared with the payments to the class.

The Court accordingly finds that an attorneys' fee award of one-third of the Settlement Fund is warranted here.

### 3. Lodestar Crosscheck

"Both the California Supreme Court and the Ninth Circuit recommend that whether a court uses the lodestar or percentage-of-recovery method, the court should perform a cross-check using the other method to confirm the reasonableness of the fee[.]." *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725, 2020 WL 1531331, at *14 (N.D. Cal. Mar. 31, 2020). "The lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys…A court then determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within an accepted range." *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020).

"The lodestar cross-check calculation need entail neither mathematical precision nor bean

1    counting .... courts may rely on summaries submitted by the attorneys and need not review actual

2    billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594, 2014 WL 954516, at *6 (N.D. Cal.

3    Mar. 6, 2014) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)).

4    Plaintiffs calculate their lodestar as $929,650, accounting for $888,112.50 in billable attorney time

5    from Myron M. Cherry & Associates, LLC, and $41,537.50 from Andrus Anderson LLP.  ECF

6    No. 89-1 ¶¶ 16, 19.  Based on counsel's summary of the time spent on the case and the

7    information provided regarding billing rates, the Court finds that this lodestar reflects a reasonable

8    number of hours expended multiplied by reasonable rates.  *See id.*; ECF No. 89 at 14 n.4; ECF No.

9    89-4 (Anderson Decl.) ¶¶ 3-5.  This lodestar does not account for hours spent on the motion for

10   final approval and final approval hearing. *See Perez*, 2020 WL 1904533, at *21 (noting that it "is

11   appropriate for a court to consider future hours in a lodestar crosscheck").

12            Plaintiffs' requested attorneys' fee award, $6,500,000, is 6.99 times the lodestar.  While a

13   lodestar multiplier of seven is significant, it is within the "acceptable range in the Ninth Circuit."

14   *Perez*, 2020 WL 1904533, at *21 (finding multipliers of 13.42, 15.42, and 18.15 reasonable); *see*

15   *Vizcaino*, 290 F.3d at 1051 n.6 (describing lodestar multipliers in the range of .6 to 19.6, with

16   "most" from 1.0 to 4.0); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007)

17   (affirming fee award based on lodestar multiplier of 6.85, finding that it "falls well within the

18   range of multipliers that courts have allowed").  Class counsel invested significant resources in

19   investigating and litigating this action, notably, with no guarantee that they would receive

20   compensation.  In large part because of their diligence and experience, they were able to secure a

21   strong settlement with focused efforts at the investigative and early stages of the litigation.

22   Reducing their award because Class counsel settled quickly would punish counsel for a strong and

23   efficient result.  The Court accordingly finds that the lodestar multiplier of 6.99 is reasonable in

24   this case and awards Plaintiffs' counsel attorneys' fees in the amount of $6,500,000.

25       **B.**    **Costs**

26            "There is no doubt that an attorney who has created a common fund for the benefit of the

27   class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v.*

28   *Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).  "[C]ourts throughout the Ninth

United States District Court
Northern District of California

18

Circuit regularly award litigation costs and expenses—including reasonable travel expenses—" in common fund cases. *Bellinghausen*, 306 F.R.D at 265. Plaintiffs request that they be reimbursed for $33,437.25 in costs. Their request is supported by Plaintiffs' counsel's declarations and billing records. ECF Nos. 89-1 at 18-21; 89-1 ¶ 18; 89-4 ¶ 17. The principal expenses are for travel to the Northern District for the case management statement, settlement conference, and settlement approval hearings, as well as process server fees and Westlaw fees. *See* ECF No. 89-1 at 18-21. The Court finds that the costs incurred by counsel were reasonable and necessary. The Court, therefore, approves costs to Plaintiffs' counsel in the amount of $33,437.25, which shall be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement.

### C.    Incentive Awards

"Incentive *awards* are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis in original, distinguishing between generally permitted incentive awards and disfavored incentive agreements). "Such awards are discretionary….and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action[.]" *Id.* "Incentive awards typically range from $2,000 to $10,000" and awards of $5,000 are presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 267.

Plaintiffs request that the two representative class members, Aguilar Auto Repair and Central Coast Tobacco, be awarded $7,500 each. ECF No. 89 at 15. The amounts requested are consistent with awards in comparable cases. *See McCabe*, 2016 WL 491332, at *2 (awarding incentive awards of $10,000 and $7,500 to named plaintiffs in CIPA class action settlement); *Reed v. 1-800 Contacts, Inc.*, 2014 WL 29011, at *10 (awarding $10,000 in incentive award to named plaintiff in CIPA class action). The named Plaintiffs' representatives attest that they took time off work to travel to and participate in the settlement conference with Judge Ryu, reviewed draft settlement agreements and class notices, and frequently conferred with their attorneys. ECF Nos. 89-5; 89-6. Both attest that taking time off work to attend the settlement conference resulted in loss of income. *Id.* Their receipt of the awards was not contingent on their support for the settlement agreement. *Id.* Given named Plaintiffs' work done on behalf of the class, the Court

finds that the incentive awards of $7,500 to each named Plaintiff are fair and reasonable. These awards are approved and shall be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for final approval of class action settlement and GRANTS Plaintiffs' petition for attorneys' fees, costs, and incentive awards. The Court awards attorneys' fees in the amount of $6,500,000 and litigation expenses in the amount of $33,437.25. The Court further awards $7,500 each to named Plaintiffs Aguilar Auto Repair and Central Coast Tobacco.

The parties and settlement administrator are directed to implement this Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties shall file a short stipulated proposed final judgment of two pages or less within 10 days from the date of this order. Pursuant to the Northern District's Procedural Guidance for Class Action Settlements, the parties shall file and post on the settlement website a Post-Distribution Accounting Form within 21 days after the settlement checks become stale or all funds have otherwise been paid to the class members. The Post-Distribution Accounting must include the following:

> a. The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the percentage of success for each method of notice and payment (if known), the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier…
> c. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. The parties may, but are not required to, use the Northern District's Post-Distribution Accounting Form, available at: https://cand.uscourts.gov/wp-content/uploads/forms/civil-

United States District Court
Northern District of California

1    forms/CAND_Post_Settlement_Distribution_Form_2024-03-12.a.pdf.

2        **IT IS SO ORDERED.**

3    Dated: May 23, 2025

4

5    _____

6    LISA J. CISNEROS
     United States Magistrate Judge